TEXAS MIDLAND RAILROAD COMPANY v. J. W. BYRD.

No. 1898.  Decided January 27, 1909.

**1.—Trial—Judge and Jury—Communications.**

The statutes (Rev. Stats., arts. 1305-1308) regulate the matter of communications between the judge and the jury, requiring that they be in open court; a violation of this requirement by the judge holding conference with the jury in private after their retirement is ground for reversal irrespective of its probable effect on the verdict. (Pp. 265-267.)

**Negligence—Track as Highway—License.**

One choosing to use a railroad bridge as a footpath, though such use was common, obtains no license to use it to the obstruction to the company's business; such use is negligence contributory to an injury received in consequence, and prevents recovery therefor. (Pp. 267-269.)

**3.—Same—Case Stated.**

Plaintiff, while walking over a railroad bridge about 200 feet long, discovered a train approaching, to avoid which he leaped from the bridge, and in so doing was injured. In his suit for damages a peremptory instruction to find for defendant should have been given. (Pp. 267-269.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Delta County.

Byrd sued the railway company, and a judgment in his favor was affirmed on appeal by defendant, who then obtained writ of error.

*A. H. Dashiell* and *Ogden, Brooks & Napier,* for plaintiff in error.— It is error for the trial judge, without the consent of the parties to the suit, to communicate with the jury, or any member thereof, during their deliberations upon the case on trial. Rev. Stats., 1895, articles 1304-1309; Holliday v. Sampson, 42 Texas Civ. App., 364; Lester v. Hays, 14 Texas Civ. App., 643; Kilgore v. Moore, 14 Texas Civ. App., 20; North Dallas Circuit Ry. Co. v. McCue, 35 S. W., 1080; Hurst v. Webster Mfg. Co., 107 N. W., 666; Danes v. Pearson, 33 N. E., 976; High v. Chick, 30 N. Y. Sup., 652.

A person in walking along the track of a railroad company, whether as a licensee or a trespasser, assumes the risks incident to the business of the company whose way he uses, and can not recover for injury resulting therefrom. Railway v. Davis, 17 N. W., 413; Vanderbeck

v. Henry, 34 N. J. Law, 472; Williams v. Railway, 2 N. Y. Supp., 435; Tucker v. Railroad, 59 Fed., 968; Kenna v. Railway Co., 35 Pac., 332; McAllister v. Burlington & N. W. Ry., 20 N. W., 488.

The operatives of an approaching train have the right to assume that a person on the track for his own convenience will leave same in time to avoid being injured, and until it becomes apparent to them that such person does not intend leaving they owe him no duty. Railway v. Smith, 52 Texas, 185; Artusy v. Railway, 73 Texas, 185; Railway v. Kuehn, 70 Texas, 585; Railway v. Garcia, 75 Texas, 583; Gulf, C. & S. F. Ry. v. Hill, 58 S. W., 257; St. Louis & S. F. Ry. v. Christian, 8 Texas Civ. App., 246; Railway v. Lowery, 61 Texas, 154; Railway v. Hewitt, 67 Texas, 480; Railway v. Herrin, 6 Texas Civ. App., 724; Railway v. Roberts, 14 Texas Civ. App., 532; Frazier v. Railway, 28 Amer. & Eng. Ry. Cases, 565; Railway v. Blanton, 4 So., 621.

The trestle of a railroad over which trains pass is a place of danger, and a person who attempts to cross it as a matter of convenience to himself, instead of using a safer way thereunder, is guilty of negligence, and can not recover for injury resulting therefrom. Gulf, C. & S. F. Ry. v. Matthews, 15 Texas Ct. Rep., 958; Railway v. Schwindt, 72 Pac., 573; Kenna v. Railway, 35 Pac., 332; Railway v. Hall, 72 Ill., 222; Tucker v. Railway, 59 Fed., 968; 5 Thompson on Negligence, sec. 6247.

Appellee was guilty of contributory negligence in attempting to walk across appellant's trestle in the manner and under the circumstances in which he did. International & G. N. Ry. Co. v. DeOllos, 76 S. W., 222.

*B. Q. Evans, C. L. Elder* and *Pattison & Sharpe,* for defendant in error.—Where a new trial is asked on the grounds of misconduct of the court or jury trying the case, and every material fact set up in the motion is specifically denied by the evidence, the overruling of the motion by the trial court is conclusive. Acts 29th Leg., Gen. Laws, 1905, p. 21; Texarkana & F. S. Ry. Co. v. Toliver, 37 Texas Civ. App., 437.

We understand the rule to be that negligence, whether by plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. Choate v. Railway Co., 90 Texas, 88; Railway Co. v. Gascamp, 69 Texas, 547; Bonn v. Galveston, H. & S. A. Ry. Co., 11 Texas Ct. Rep., 237; Titterington v. Harry, 17 Texas Ct. Rep., 109.

Where the track or grounds of a railway are used by pedestrians as a passway for a considerable length of time without objection on the part of the railway company, or with the tacit acquiescence on the part of the company, a pedestrian walking along such grounds or along such track becomes a licensee in such a sense that he is not to be considered as a mere trespasser, acting at his peril; but that it becomes the duty of the company, operating its train at such places, to use increased prudence and caution in proportion to the danger to

such persons by maintaining a proper lookout upon its engine and train, and by giving audible signals on approaching such places, such as would be required on .approaching a public crossing. Railway Co. v. Watkins, 88 Texas, 20; Hutchens v. St. Louis S. W. Ry. Co., 40 Texas Civ. App., 245; Gulf, C. & S. F. Ry. Co. v. Matthews, 99 Texas, 160; St. Louis S. W. Ry. Co. v. Shiflet, 98 Texas, 326; Washington v. Railway Co., 90 Texas, 314; McGary v. Railway Co., 89 Texas, 168; Lee v. Railway Co., 98 Texas, 583; Gulf, C. & S. F. Ry. Co. v. Matthews, 13 Texas Ct. Rep., 949.

The issue of discovered peril was raised by the pleadings and evidence and was submitted to the jury by the charge of the court, and the evidence in support of said issue was sufficient to authorize the affirmance of said judgment, or, at least, if the judgment is reversed, the same should be remanded for a new trial, in order that the issue of discovered peril might be submitted to the jury on another trial. Missouri, K. & T. Ry. Co. v. Saunders, 18 Texas Ct. Rep., 886; Texas & P. Ry. Co. v. Brannon, 43 Texas Civ. App., 531; Texas & P. Ry. Co. v. Ball, 96 Texas, 622; Gulf, C. & S. F. Ry. Co. v. Brown, 33 Texas Civ. App., 269.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This suit was brought by the defendant in error against the plaintiff in error to recover damages for personal injuries alleged to have been received through the negligence of the servants of the railroad company. After the case was tried and verdict rendered, a motion for new trial was filed on behalf of the plaintiff in error, and, among other grounds for said motion, was the misconduct of the court and jury after the case had been submitted to the jury. This ground of the motion claimed that after the evidence was introduced, the case argued, and the jury were charged and had retired to consider of their verdict, the court had more than one conference with the foreman of the jury, which was not in open court with all of the jury present. Upon a hearing of the motion evidence was introduced on both sides, and in some particulars the evidence in support of the motion was controverted by contradictory testimony. Counsel for the defendant in error invoked the rule that where the evidence showing misconduct of the jury is contradicted on the other side and the court has passed upon it and held it is not sufficient to show misconduct in the action of the court in overruling the motion, it will not be held to be error. But in signing the bill of exceptions upon overruling the motion the court appended to the bill a statement of the grounds upon which it acted, and this statement shows the fact that the court did so confer with the foreman of the jury was true. And this much we can therefore say was clearly established, and we think it was such improper conduct on the part of the court as requires the motion to have been granted. It is not a question simply of the misconduct of the jury, and of whether such misconduct would probably influence the verdict, but it was a question of the misconduct of the court and the propriety of allowing a judgment to stand after such action on the court's part. It seems to us that in deciding this question we are not required to enter into a discussion of

the question of how a conference between the judge and the foreman would have affected a verdict if at all. The statutes prescribe that:

"Art. 1305. The officer having the jury under his charge shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon a verdict, unless by order of the court; and he shall not, before their verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon."

"Art. 1306. If the jury are permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court that it is their duty not to converse with or suffer themselves to be addressed by any other person, on any subject connected with the trial."

"Art. 1307. When the jury wish to communicate with the court, they shall make their wish known to the officer having them in charge, who shall inform the court thereof, and they may be brought into open court and through their foreman shall state to the court, either verbally or in writing, what they desire to communicate."

"Art. 1308. The jury may, after having retired, ask further instruction of the court touching any matter of law. For this purpose they shall appear before the judge in open court in a body and through their foreman state to the court, either verbally or in writing, the particular question of law upon which they desire further instruction, and the court shall give such instruction in writing; but no instruction shall be given except upon the particular question on which it is asked."

It is thus seen that the statutes very carefully provide the manner in which the court shall confer with the jury and that he shall give no instructions or confer with them in any manner except in open court. The obvious purpose of this is that counsel may be present and see that the conference is proper, and, if not, may take a bill of exception to the action of the court. It seems to us, therefore, that it is error for the judge to confer with the jury in any other manner than that prescribed by law, and that if he does his judgment on that account ought to be reversed.

In numerous cases from other jurisdictions it is held that the private conversation of the judge and the jury is not only improper, but that it is misconduct for which the judgment will be reversed, without reference to the question whether such misconduct affected the verdict. Sargent v. Roberts, 1 Pick., 337; Read v. Cambridge, 124 Mass., 567; Watertown Bank & Loan Co. v. Mix, 51 N. Y., 558; Fish v. Smith, 12 Ind., 563; Crabtree v. Hagenbaugh, 23 Ill., 349; Moody v. Pomeroy, 4 Denio, 115; Kirk v. State, 14 Ohio, 511; Bunn v. Croul, 10 Johns., 238; State v. Smith. 6 R. I., 33. In speaking for the court in the case first cited above, Chief Justice Parker says: "The communication in question in this case was made upon the ground of this practice, which had been so common here as to pass without notice. The object of the note of the foreman was probably to obtain leave for the jury to separate, and the answer of the judge was calculated to enable them to revise the case in a systematic manner, in the hope that such a revision would pro-

duce a union of opinion on one side or the other of the cause. It probably had that effect. As it is impossible, we think, to complain of the substance of the communication, the only question is, whether any communication at all is proper, and if it was not, the party against whom the verdict was is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: "He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed;" and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings; and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper. It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it; the only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case except in open court in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. If, by reason of the long intervals between the sessions of the court, jurors here are subjected to inconveniences which do not exist elsewhere, this must be remedied by holding two sessions a day instead of one. It is better that everybody should suffer inconvenience, than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy." It is but just to the learned judge before whom the case was tried to say, that his conduct in the matter involved no moral delinquency on his part, nor so far as we can see, did it in any way affect the verdict of the jury.

We approve the remarks just quoted, and we think they are supported by the overwhelming weight of authority. In the view we take of the case it is not necessary that we should pass upon the assignment, but we consider the question of such importance as to make a ruling upon it appropriate.

But there is another assignment, the determination of which is in our judgment fatal to the plaintiff's case, and that is the refusal of the court to grant a request for an instruction for the defendant. The facts of the case show that the plaintiff, while walking over the bridge of the defendant, which was 195 to 200 feet in length, discovered a train approaching, and in order to escape being struck thereby attempted to jump off the bridge, and in doing so was injured. There is evidence tending to show that the bridge in question was generally used by persons while walking along the track, so that it might be deemed that they had a license to use the track for the purpose of a foot passage, but as was said by Associate Justice Williams speaking for the court in the case of Gulf, C. & S.

F. Ry. Co. v. Matthews (100 Texas, 68): "An implied permission, such as is claimed, to use a railroad track as a footpath may relieve the person enjoying it of the imputation of being a trespasser, but it does not relieve the place of its inherent dangers nor exempt the traveler from the duty to act with ordinary prudence. When he voluntarily chooses the dangerous pathway instead of a safe one beside it, we can see no escape from the conclusion that he is guilty of negligence, if there be no justifying or excusing circumstances."

This is in accordance with what is said in Illinois Central Railway Co. v. Hall, 72 Ill., 222: "It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risk of the perils he may encounter. The crossing of a track of a railroad is a different thing. The one is unavoidable, but in the other case he voluntarily assumes to walk amid dangers constantly imminent. It is sought, in this case, to justify the conduct of appellee in traveling upon the track of the railroad by the fact that there were no good walks elsewhere on the street for persons on foot, nor had the street, outside of the road bed, been graded to accommodate the travel. This was no fault of the railroad company. It was not its duty to grade the street. The street is eighty feet wide, and, if graded, might be used with safety, as ordinary streets, notwithstanding the railroad is laid in it. But there was a path between the tracks and one at the side, which appellee could have used without the least danger. The side path was not so easy to walk upon as that between the rails, but that fact did not justify appellee in taking the dangerous path. He was familiar with the dangers to which he was exposed, and we must conclude he voluntarily assumed the hazard. He could have avoided all danger by a little inconvenience, but he did not choose to do it. The injury received must, therefore, be attributed to his want of ordinary care." (Irion v. Saginaw, 120 Mich., 295; Smith v. New Castle, 178 Pa., 298; Kenna v. Central Pac. Ry. Co., 35 Pac., 332; Atchison, Topeka & S. F. Ry. Co. v. Schwindt, 72 Pac., 573.)

In the case of Gulf, C. & S. F. Ry. Co. v. Gasscamp (69 Texas, 545), it was held that a party who was injured in crossing a defective bridge over the company's track in a public highway was not guilty of negligence because there was a safer way which he might have taken. This was upon the ground that under the circumstances of that case a prudent man might have taken the way plaintiff had adopted without being guilty of contributory negligence; but in that case it is clear the bridge was upon the public road and the plaintiff had the right to cross there. He had not simply a permission or license to cross, but an absolute right to use it, it being in the public highway.

In Thompson on Negligence it is said: "If a traveler upon a highway has a choice of two ways, one of which is safe and the other unsafe, and if he knowingly chooses the one which is unsafe without any necessity for so doing, he is deemed to take upon himself the risks of his foolhardy act; and if he is injured in conse-

quence of it, he can not recover damages from the municipality." (Thompson on Neg., sec. 6247.)

It is apparent from plaintiff's own testimony that there were other ways of going to his destination by which the crossing of the bridge might have been avoided, and he having selected a way he knew to be dangerous, his conduct must be considered negligence on his part. Giving all the effect of implied license to ·use the bridge as is claimed for it in this case, it could hardly be said that it implied a license to use the structure to the obstruction of the defendant's business. Persons found on the track of the road would necessarily interfere with the free use of its track by the defendant company, for if his peril was discovered the company would be compelled, in order to avoid injuring him, to stop its train in toto until he had placed himself in a place of safety. We think that the doctrine upon which the license of the railroad company is implied by the use which persons put it to by using it as a footpath has been pushed far enough in this State and we are not inclined to let it go any further. We are clearly of the opinion that the defendant was guilty of contributory negligence in going upon the trestle where he was in danger of being struck by a train or being forced to jump and injure himself, and that, therefore, the judgment should be reversed and judgment here rendered for the defendant company.

We deem is unnecessary to pass upon the other assignments in the case.

*Reversed and rendered.*