OATES et al. v. MAXCY et al. (No. 7606.)

(Court of Civil Appeals of Texas. Galveston. Nov. 8, 1918.)

1. APPEAL AND ERROR ⬚1170(6)—REVIEW—HARMLESS ERROR.

Where court, upon written request from jury after it had retired for deliberation, sent jury written answer containing the further instructions, its failure to summon the jury into open court to further instruct it, as required by Rev. St. arts. 1961 and 1962, was not reversible error,

in view of rule 62a (149 S. W. x), where written instruction was handed to officer in charge of jury, who handed instruction to jury foreman.

2. TRIAL ☞312(1) — INSTRUCTIONS AFTER SUBMISSION OF CAUSE—DUTY OF COURT.

It is not only the right, but the duty, of the court to give the jury additional instructions as to the law of the case after they have retired, upon proper request being made therefor.

3. TRIAL ☞312(2)—INSTRUCTION AFTER SUBMISSION OF CAUSE—SUFFICIENCY.

In action involving boundary dispute, an instruction, in response to request from jury as to whether measurements in deeds immediately following first grant should be considered as circumstances to locate corner, *held* a direct answer to jury's question.

4. TRIAL ☞194(10)—INSTRUCTION—WEIGHT OF EVIDENCE.

In action involving boundary dispute, an instruction as to recitals of distance in deeds, patents, surveys, or other instruments subsequent to original survey, and effect thereof upon location by original surveyor, *held* not on weight of evidence.

Error from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by J. W. Maxcy and others against Annie E. Oates and others. Judgment for plaintiffs, and defendants bring error. Affirmed without opinion. On motion for rehearing. Denied.

Tharp & Tharp, of Houston, for plaintiffs in error.

J. W. Lockett, of Houston, for defendants in error.

PLEASANTS, C. J. This suit is in form an action of trespass to try title, brought by appellees against appellants. The defendants in the court below pleaded not guilty, and further pleaded that the land sued for is included within the Thomas Earle survey, which is owned by defendants and is 88 years senior to plaintiffs' survey. The only issue in the case raised by the evidence is one of boundary. The cause was submitted to a jury in the court below by the following charge:

"First. Plaintiff has sued for a tract of 37.2 acres of land in Harris county, Texas, patented by the state of Texas to J. W. Maxcy, by patent dated July 5, 1912. The defendants claim that the land sued for is in conflict with and composes a part of the Thos. Earle labor, and they claim that the boundaries of the Thos. Earle labor include the land in controversy. The plaintiff claims that the land sued for is west of and adjoining the Thos. Earle labor.

"Second. From a fair consideration of all the evidence admitted by the court, it is your duty to determine the true location of the west line of the Thos. Earle labor as it was originally located and granted, and it will be necessary for you to determine whether the said Thos. Earle labor, as it was described in the grant to Thos. Earle and located on the ground, includes the land in controversy, or whether the land in controversy is west of and adjoining the Thos. Earle labor; and to do this it will be necessary for you to determine where is the true location of the west line of the Thos. Earle as it was originally placed on the ground by the surveyor who first surveyed for the grant to Thos. Earle."

Special issue No. 1 was submitted by the court as follows:

"Does the Thos. Earle labor as it was originally located in the grant to Thos. Earle include and embrace the 37.2 acres of land patented by the state of Texas to J. W. Maxcy, July 5, 1912?"

"If you find from the evidence that the land in controversy was within the Thos. Earle labor, as it was located, you will answer 'Yes.'

"If you find from the evidence that the land sued for is not within the Thos. Earle labor, as it was originally located, you will answer 'No.'"

The jury answered the question submitted in the negative, and upon the return of such verdict judgment was rendered in favor of plaintiffs for the land in controversy.

The verdict is amply supported by the evidence, which it is unnecessary for us to set out, as appellant does not contend that the evidence is not sufficient to sustain the verdict.

As appears from the charge of the court above set out, the issue to be determined by the jury was the location of the west line of the Thomas Earle survey, as it was originally fixed on the ground by the surveyor who located the survey.

The Thomas Earle survey was located in 1824. The field notes of the original grant describe the survey as beginning at a mound on the bank of Green's bayou, from which the surveyor "measured one thousand varas west, where another mound was planted; thence south, one thousand varas, another mound; thence east, nine hundred varas, to said bayou; and thence, following the meanders of said bayou, upwards to where he began, containing a superficie of one labor." There is no dispute as to the location of the north and south lines of the survey, which extend from Green's bayou, the east boundary of the survey; but appellants claim that said lines are 200 varas longer than the call in the original field notes, thus placing the west line of the survey 200 varas further west than it is placed by the calls in the original field notes of the survey. If the west line is thus placed, all of the land claimed by appellees is within the boundaries of the Earle survey.

In support of their contention as to the true location of the land in controversy, appellants introduced in evidence the James Gordon survey, which was patented in 1876, and which lies north of the Earle survey. The first call in the original field notes of the Gordon survey is as follows:

"Beginning at a stake on the right bank of Green's bayou, being the N. E. corner of a labor of land originally granted to Thomas Earle; thence west 1,200 vrs., along said T. Earle's N. line, to a stake in the east line of a league granted to Reels & Trobough."

They also introduced deeds in their chain of title executed in 1878 and 1891, respectively, the field notes of which give the length of the north line of the Earle survey as 1,200 varas.

The first assignment of error complains of the action of the trial court in answering questions asked him by the jury, after the jury had been deliberating upon the case for several hours, without having the jury brought into open court and the attorneys for plaintiffs and defendants present when such answers were given.

The facts upon which the assignment is based are thus stated in the bill of exceptions reserved by appellants:

"Be it remembered that this cause was submitted to the jury on the 15th day of November, 1916, and the jury retired to consider of their verdict; and after deliberating about 6 hours, and after the court had adjourned for the day, and with the previous consent of the attorney for both parties had instructed the jury to bring in a sealed verdict, the foreman informed the sheriff in charge that the jury wanted to communicate with the court; whereupon the sheriff recalled the judge to the courtroom, it being about 6 o'clock p. m. when the judge arrived, whereupon, under instructions from the court, the sheriff opened the door of the jury room and received from the foreman a paper containing the following:

"'Judge Dannenbaum, 61st District Court: We, the jury in cause No. 60798, respectfully ask you to explain to some of the members of the jury verbally the meaning of the word "superficie."

"'Also, are we to consider measurements in deeds immediately following first grant as circumstances to locate corners?

"'O. E. Reynaud, Foreman.'

"Which paper having been delivered by the sheriff to the court, the latter wrote thereon the following, affixing his signature thereto:

"'Gentlemen of the Jury: I do not recall in what instrument which has been introduced in evidence the word "superficie" appears. At any rate, the word "superficie" has nothing to do with any issue in the case, and I advise that you give no further consideration to the meaning of the word.

"'With reference to the second question, you are instructed that the sole issue is where the west line of the labor was located by the surveyor who made the original survey on the ground. Recitals of distance in subsequent deeds, patents, surveys, or other instruments introduced in evidence were admitted in evidence, and are to be considered by you only as you may or may not find that they throw any light on the location of the west line of the labor, by the original surveyor. In other words, such subsequent recitals cannot change the original location, but can only be considered or not considered, according as you may find as bearing on the facts of the original location.

"'Henry J. Dannenbaum, Judge.'

"Which paper, containing the above questions and the answers thereto, was thereupon handed by the judge to the sheriff, who delivered the same to the foreman of the jury through the door of the jury room. The jury and each member thereof remained in the jury room during the entire proceedings above described, and the attorneys of neither plaintiffs nor defendants were present in the courtroom during said proceedings, and did not consent thereto.

"To which action of the court and jury the defendants in open court excepted, and file this their first bill of exceptions, and pray that the same be allowed, ordered filed, and made a part of the record of this case, which is accordingly done.  Henry J. Dannenbaum, Judge."

Appellants' proposition under this assignment is:

"The court had no right, under the law, to communicate with the jury after it had retired to consider of its verdict, otherwise than by bringing the jury into open court, with the attorneys in the case present."

The following are the provisions of the statute affecting the question presented by this assignment:

Revised Statutes, art. 1961, is as follows:

"When the jury wish to communicate with the court, they shall make their wish known to the officer having them in charge, who shall inform the court thereof, and they may be brought into open court, and through their foreman shall state to the court, either verbally or in writing, what they desire to communicate."

Revised Statutes, art. 1962, is as follows:

"The jury may, after having retired, ask further instruction of the court touching any matter of law. For this purpose, they shall appear before the judge in open court in a body, and, through their foreman, state to the court, either verbally or in writing, the particular question of law upon which they desire further instruction, and the court shall give such instruction in writing; but no instruction shall be given except upon the particular question on which it is asked."

[1] The only provision of the above statute which was not strictly complied with by the trial court in giving the additional instructions requested by the jury was in failing to have the jury brought into open court to present their request and receive the instructions. We cannot bring ourselves to believe that this omission on the part of the court constitutes such grave and material error in the trial of the cause as requires a reversal of the judgment.

In the case of Ry. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, our Supreme Court approves the rule announced in the case of Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185:

"That no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in the presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: 'He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed;' and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper. It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it. The only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case except in open court, in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. If, by reason of the long intervals between the sessions of the court, jurors here are subjected to inconveniences which do not exist elsewhere, this must be remedied by holding two sessions a day instead of one. It is better that everybody should suffer inconvenience than that a practice should be continued which is capable of abuse, or at

least of being the ground of uneasiness and jealousy."

[2] The conduct of the judge complained of in the Byrd Case was that, after the jury had been charged and had retired to consider of their verdict, the judge "had more than one conference with the foreman of the jury which was not in open court with all the jury present." Our Supreme Court found it unnecessary to pass upon the assignment, because the case had to be reversed and rendered upon another ground, but the remarks above quoted from the Sargent Case were expressly approved. The communication in the Sargent Case consisted of a note sent the judge by the foreman asking permission for the jury to separate, and an answering note by the judge telling the jury how they might proceed to consider the case and arrive at a verdict. While in each of the cases cited the judge was acquitted of any improper motive, and the substance of the communication was not shown to be harmful, we think both of these cases show a much more flagrant and dangerous violation of the statutory rules governing communications by a judge with the jury after they have been charged and have retired to consider what verdict they shall render on the facts in evidence and the law as given them in the charge of the court than is shown in this case. It is not only the right, but the duty, of the court to give the jury additional instructions as to the law of the case after they have retired, upon proper request being made therefor. In this case the jury, through their foreman, submitted to the judge in writing the specific question of law upon which they desired further instructions, and no instruction was given by the judge except upon the particular question upon which it was asked. The request was received by the judge, and the instructions written in the courtroom and handed by him to the officer in charge of the jury, who took it to the jury room and delivered it to the foreman. There was no formal opening of the court, and the jury were not brought from the jury room into the courtroom to present their request and receive the instruction. This was all that was lacking of a strictly literal compliance with the statute. Appellants could not possibly have been injured in the slightest by this omission of the judge. The statute above quoted does not require that the attorneys in the case shall be present when additional instructions are given. The statute regulating the manner in which the charge of the court shall be prepared and submitted to the jury before their retirement directs that the charge be submitted to the attorneys before it is read to the jury. If this statute could be held to apply to additional instructions given the jury at their request after their retirement, a judgment should not be reversed, if the charge given the jury was correct, merely because it was not submitted to the attorneys

before it was given to the jury. The communications in this case between the judge and jury were wholly in writing and became a part of the record in the case. The full extent of the communication being thus preserved, neither appellants nor this court can be in doubt as to its scope, and its probable effect upon the verdict of the jury can be readily determined. Our courts no longer adhere to the old rule that any violation by a trial court of a rule of procedure requires a reversal of the judgment in the case regardless of the probable effect of the error. Long before the formal promulgation of rule 62a (149 S. W. x), this court had held in numerous cases that a judgment would not be reversed for an error of law committed on the trial when such error could have had no reasonable effect upon the result of the trial. Since the promulgation of the rule mentioned we are not authorized to reverse a judgment for an error of law committed by the trial court in the course of the trial unless we are of opinion "that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of his case to the appellate court."

Believing, as we have before stated, that the error here complained of could not possibly have any effect in producing the verdict of the jury, and it affirmatively appearing that such error has not prevented appellant from making a proper presentation of his case to this court, we cannot, under this rule, reverse the judgment because of this error. We would feel constrained to make this holding even if we thought that the omissions of the judge shown in this case were as much calculated to arouse jealousies and suspicion of the fairness and integrity of the verdicts of our juries and judgments of our courts as the conduct of the judges criticized in the cases cited, but we do not think the omissions of the judge in this case could have tended to produce such dangerous and deplorable results. On the other hand, the reversal by appellate courts of judgments for errors which can only be regarded as harmless in their effect upon the results of the trials in the lower courts does have a tendency to weaken confidence in the courts.

In the case of Holliday v. Sampson, 42 Tex. Civ. App. 364, 95 S. W. 643, cited by appellant, the record shows that the judge, after the jury had been charged and retired for consideration of their verdict, without the consent of the attorneys in the case, went into the jury room and discussed with and explained to the jury the evidence in the case. No other judgment than one of reversal could have been rendered in that case by the appellate court because it could not reasonably be said that the action of the judge was not

calculated to cause, and did not probably cause, the rendition of the verdict returned by the jury. The opinion in that case cannot be considered controlling authority in this case.

The other two assignments presented in appellant's brief complain of the instructions given the jury in answer to their request on the grounds that the answer given to the second question was not a direct answer, and that said answer is upon the weight of the evidence.

[3, 4] We think neither of these objections to the instructions is sound. While the answer of the court to the question might have been more concisely expressed, it was a direct answer and was not upon the weight of the evidence.

We affirmed the judgment in this case at the last term of this court without opinion, no written opinion being required to be filed by this court in boundary cases when the judgment of the trial court is affirmed. Appellant filed a motion for rehearing, which was taken over to the present term, and has recently been refused. This opinion is filed at the request of appellant, and because we deem the question discussed herein to be one of importance.