MEINECKE et ux. v. FIDELITY INV. CO., Inc., et al.

No. 12828.

Court of Civil Appeals of Texas. Fort Worth.

April 22, 1933.

Rehearing Denied June 17, 1933.

Clarence E. Farmer, of Fort Worth, for appellants.

Mack & Mack, of Fort Worth, for appellees.

LATTIMORE, Justice.

Appellants were taken by agents of appellees to the magic valley along the lower Rio Grande to inspect property with a view to selling same to appellants. They were shown thousands of acres—which did not belong to appellees—of the most beautiful and fruitful of that fertile section. They were carried from this thriving but none the less thirsty community across the Rio Grande, where our Mexican neighbors are not so thriving—or so thirsty. Nor were these elderly appellants so thirsty when they returned to the land of the noble experiment. They were carried to see appellees' promotion, the "Pride O'Texas" in the upper end of the valley, and signed a contract to purchase 15 acres in said addition, giving therefor a duplex building and a vendor's lien note of the combined contract value of $7,818, and also agreeing to execute notes aggregating $5,682 secured by a mortgage on said 15 acres, an aggregate consideration of $900 per acre.

Appellants sue to rescind the trade, alleging that the combined artifices, more particularly pleaded, of the appellees' agents and their Mexican beer had blinded appellants to the fact that this land was not ditched for irrigation, was only partly planted in citrus, was not on a paved highway, was not the land which was shown them as the 15 acres to be conveyed, was not of the value of $900 per acre, all which representations were alleged to have been made by appellees, and that appellees exercised "undue influence" upon appellants to obtain their signatures to the contract.

The contract bound appellants to deliver all the notes and the duplex and that thereafter appellees would deliver a deed and supplemental abstract to the 15 acres, and agreed that appellees would clear the land of brush and plant said land in citrus and orange trees and obtain a contract for them with "a responsible party" to care for and irrigate said trees for three years.

Upon a trial a jury verdict was returned that the contract was obtained of appellants by "undue influence" of appellees' representatives, and, by issue No. 6, that "the representations which were made to the appellants prior to the signing of the contract were not false," and that the 15 acres with the performance of contractual promises as to development was of the actual value of $900 per acre.

Upon this verdict the court rendered judgment for defendants, appellees here.

While the jury was deliberating, the foreman wrote a message to the judge inquiring about two law matters involved in the charge. This message was delivered to the bailiff after the foreman had searched for him a short time, and the bailiff delivered it to the judge, who wrote thereon in substance that the jury would answer the issues in accordance with the charge already given them and returned the same to the jury in the

jury room via the bailiff. R. S. arts. 2194–2198, set out explicitly how the judge may communicate with the jury. It is now well settled that the manner of communication as was used in this case is error. Gerneth v. Galbraith Foxworth Lumber Co. (Tex. Com. App.) 38 S.W.(2d) 775, and cases there cited. A dispute exists as to whether appellants' attorney was in the courtroom, it being appellees' contention that he was. We think the case presents reversible error more strongly by such assumption, provided counsel did not waive his rights. Such a communication is not of itself vicious. It can be done by agreement. The error can be waived. If counsel abandon the .watchful care of his case, leave the courthouse, and some routine communication with the jury is necessary and counsel has absented himself so that he cannot be consulted as to the necessity of disturbing the jury's deliberations to bring them to the jury box, sometimes from a different floor or building, the blind obedience to such a ritual might well be questioned. But certainly if he is present at the bar the judge must allow him his statutory right to see and except to instructions or the refusal thereof. Texas Midland R. R. Co.`v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137. The communication is not shown in the record. The refusal to give further instructions may have been substantial to appellants' rights. Such instruction may have been proper and necessary.

The contract was procured by "undue influence." This means that no real assent thereto was had from appellants, and with an illegal purpose, to wit, to obtain from them their property without their consent. Assuming that the "actual" value of the 15 acres was $900 per acre (and the very physical facts make such incredulous whether we can say so judicially or not), still the courts have not yet been able to find excuse to make an owner make such a trade if he does not consent. The jury have found that he had not expressed any real consent.

Appellants excepted to issue No. 6 because it did not allow the jury to pass upon the specific misrepresentations pleaded. It will be observed that the court asked if "the representations," etc., were false. "Answer yes or no." This placed the jury where they could not find that part of the representations were false and part were true. They must answer "yes" they were all false, or "no" they were all true. This was error and prejudicial to the rights of appellants.

We have examined all assignments. A discussion of them all would lengthen this opinion unduly and is not necessary, since most of them probably will not occur again.

The judgment of the trial court is reversed, and the cause remanded.