TEXAS EMPLOYERS' INS. ASS'N

v.

FOREMAN.

No. 14293.

Court of Civil Appeals of Texas.

Dallas.

Nov. 23, 1951.

Concurring Opinion Nov. 27, 1951.

Rehearing Denied Dec. 21, 1951.

Keith & Brown, Sherman, Gullett & Gullett, Denison, for appellant.

Webb & Rogers and Lester C. Newman, Sherman, for appellee.

BOND, Chief Justice.

In deference to appellee's second motion for rehearing, and the judgment of the Supreme Court remanding this cause to this Court in order that we may decide the points of error raised in appellant's brief on the findings of the jury: (1) That appellee suffered accidental injury in the course of his employment, (2) that he was totally and permanently disabled as a result of the accidental injury alleged, and (3) that the findings are "so against the preponderance of the evidence as to be clearly wrong"; Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W. 2d 977, 980, we withdraw our former opinion and in lieu thereof substitute the following:

In our original opinion (motion for rehearing overruled Per Curiam), it will be

seen that we did not reverse and remand the cause on the ground that there was "no evidence," but we expressed the opinion that the preponderance of evidence is so against the findings of the jury that the trial court should have granted a new trial. Our reversal hinged on what we determined was error in the trial court's communicating with the jury, which disclosed the "state of the jury's deliberations," and which was calculated to and possibly did actuate the jury in returning a verdict;—a direct violation of Rules 283, 284, 285, Texas Civil Procedure; source unchanged, Arts. 2195, 2196, 2197, Vernon's Ann.Civ. St. Supported, we thought by the following authorities: Texas Midland R. Co. v. Byrd, 102 Tex. 263, 115 S.W. 1163, 20 L.R. A.,N.S., 429; Lincoln v. Stone, Tex.Com. App., 59 S.W.2d 100; Houston Electric Co. v. Lee, 139 Tex. 166, 162 S.W.2d 692; Houston Electric Co. v. McLeroy, 139 Tex. 170, 163 S.W.2d 1062; Holman Bros. v. Cusenbary, Tex.Civ.App., 225 S.W. 65 (writ ref.).

We have again carefully reviewed the record and are of the opinion that the verdict of the jury with reference to the alleged compensable accident and resulting injury to appellee's back, warrants the conclusion that while appellee's proof justified the submission of the case to the jury, yet, it having been submitted as the trial court was duty bound to do, it is equally our duty, if we find the preponderance of the evidence so against the jury's verdict, to remand the case for a new trial. In our opinion, the facts and circumstances in evidence greatly preponderate against the verdict and are so at variance with reality and normal human conduct as to be unacceptable, or at least sufficiently so that a new trial should be granted.

Briefly, the defendant (appellant) introduced in evidence fourteen of plaintiff's fellow-workers employed at the Sherman Manufacturing Company's Mill at the time defendant claims to have been injured, the mill superintendent, assistant superintendent, overseer, plaintiff's own personal physician, his doctor from the Veterans Administration Hospital at McKinney, Texas, a radiologist, and a doctor who examined him for employment at the Sherman Manufacturing Company. All said witnesses gave evidence as to raise a serious doubt that appellee could have or did sustain the injury, as claimed by him, on the occasion in question. Appellee worked approximately in the center of a large weaving room at the mill, where the machinery (looms) was of low construction, and the employees working therein could readily see and be seen while at work in all parts of such room, and where the plaintiff was working. It would seem, at a glance, that if appellee suffered injury, as he claims, it is likely some one of his fellow-workers would have either observed or heard of it. It is unreasonable to conclude that the plaintiff sustained such severe injury as he claims, without divulging it to any of his fellow-workers. To the contrary, none of them saw or heard of his getting hurt. One man and three women (weavers at the looms) gave evidence that as a part of their duties they frequently patrolled aisles in and around their respective looms and had frequently observed the appellee; each witness gave evidence that they had the opportunity to see and talk with the appellee and that they never saw appellee sustain any injury or heard him say anything about receiving an injury. That he did not appear to be in any pain and there was nothing abnormal about his appearance. He worked without any apparent difficulty, or trouble. Five other women, all working in the room with appellee at the time he claimed to be injured, testified as to their respective opportunities to see and observe appellee and that they never saw him get hurt, he never said anything to them about getting hurt or having an accident, or that he was in pain; that there was no abnormality about his movement or appearance. Two other men, employees who handled air hose to clean the looms when the finished cloth is removed, and who sweep up waste around the loom where appellee worked, likewise testified that they did not see appellee suffer any injury, that he never said anything to them about being hurt at the mill, that he did not appear to be in pain, and there was

nothing out of the ordinary about his appearance. Like testimony was given by another fellow-worker whose job was to remove remnants of thread from the quills (attached to the looms); and by another employee whose duty (in cotton-mill lingo) was that of a "smash hand,"—to work on the looms when the thread breaks or the cloth was being produced by the looms. Another employee whose duty called him to all parts of the mill, including the weaving room where appellee worked, testified that he saw appellee frequently, it being his duty to give first aid to injured employees of the mill and make reports of any injury which might appear to be serious. He testified that the first information he had of appellee's claiming to have been injured at the mill was sometime during the summer of 1949 when appellant's investigator came to see him and told him of appellee's claim; that appellee did not tell him (witness) that he had been injured; hence no report of such injury was ever made. The overseer of weaving, Mr. Bailey, testified that he was in and out of the weaving room frequently, saw appellee, that appellee never said anything to him about having suffered an injury; he did not appear to be in pain, and he saw nothing wrong with appellee.

The record evidence further shows that after appellee quit work he returned to the mill and made application to the plant superintendent to go back to work, stating to Mr. Newman, assistant superintendent, and to Mr. Bailey, that he wanted a temporary, lighter job than the one he had been doing; that he was a little weak, otherwise felt pretty good. Mr. Newman and Mr. Bailey testified that they did not know the appellee had been injured at the plant. When he made application for re-employment he said nothing to them about having had an accident while working there. The safety director, who had the job of making out all accident reports, testified that he knew nothing whatever about appellee claiming an injury; that although he saw appellee at the plant when he was seeking to return to work, appellee said nothing about having had an accident. The mill superintendent, Mr. Poole, testified that he had two conversations with appellee about returning to work before he was sent to a doctor for re-entry examination, and one conversation with him before the doctor's report was received; that in none of such conversations did appellee make any claim of having been injured; the first information he had was when he received a written "Notice of Claim" four or five days after the aforesaid last conversation.

Opposed to aforesaid testimony, appellee testified in detail that he suffered a severe injury to his back in the course of his employment at the Sherman Manufacturing Company, while working on a loom at the mill, in the loom room; that he suffered severe pain as the result of the accidental injury, which he claims caused total and permanent disability; that the pain was intense immediately after the injury, subsided somewhat after a few minutes, but recurred as soon as he got home, and continued while he was working at the mill during the next two days after the accident; that he was in pain when he returned to make application for a job. Appellee's supporting evidence of excruciating pain consists of the testimony of four witnesses,—his wife, a brother-in-law, a cousin, and a doctor, the latter testifying to a related hypothetical question. The record shows that appellee's testimony was submitted in the trial of the case by written deposition as well as oral interrogatories. In each instance he testified that while he was working at Perrin Field, Sherman, Texas, at a date shown to have been in 1944 or 1945, he suffered a prior accident similar in some respects to that claimed in this suit; that, being a war veteran, he was admitted to the Veterans Hospital at McKinney, Texas, on application showing the history of his prior injuries received at Perrin Field for the hospital records; and in 1949 he gave to his own physician, Dr. C. J. Donaghey, a history of his ailment, but gave no account of any injury or accident while working for Sherman Manufacturing Company. On the contrary, mentioned to the doctor that he was then suffering from sciatica,

which he had had before. The doctor testified that appellee gave him no history of trauma, and that in the course of treatment he was requested by appellee to secure from the Veterans Administration Hospital his case history as given to that hospital at the time of his entry therein. The record shows that the historical report of appellee at said hospital was received by Dr. Donaghey and turned over to appellee; that it was brought into court by appellant's suing out a subpoena duces tecum, and when appellant attempted to divulge to the jury its contents, the appellee objected, thus exercising the privilege accorded him by law to prevent doctors at the hospital from revealing matters considered personal without consent of the patient. Aside from that, when appellee's deposition was taken, he refused to allow appellant to have any report concerning his physical condition, either from his own doctors who had treated him or from the hospitals in which he had been a patient; and at the trial he again refused to allow appellant such reports, expressly stating that he was not willing to have such information exposed. The record further reveals that a Mrs. Yeagley, Medical Records Librarian at Wilson N. Jones Memorial Hospital at Sherman, testified that in 1945, as a part of her duties, she took a bedside case history from the appellee and at that time made written notations on such history. After reviewing her notations to refresh her recollection, she testified that appellee stated to her that in 1944, while an employee at Perrin Field, Sherman, Texas, he injured his back, and that, off and on, until he was admitted to the hospital on July 27, 1945, he had suffered pain in his left hip, radiating down the left foot. Appellee's doctor only gave corroborating evidence that the appellee had an injured back, as he termed it, lumbosacral interspace, and that such injury is sufficient to cause total permanent disability.

The statement of facts is quite lengthy, consisting of 530 pages and a number of exhibits. To extend the recitation of the record to the fullest would prolong this opinion beyond what we think would be of any useful purpose. We have, however, carefully reviewed the record in full and have arrived at the conclusion that the great weight and preponderance of the evidence is against the verdict of the jury,—though it may be said there is some evidence which, perhaps, would not justify the court's refusal to submit the issue to the jury. Such being the evidence, we feel constrained to hold that the court below should have granted a new trial upon motion of the defendant. Although this Court has the power to review a case on the facts, and to set aside a verdict which has evidence to support it, that power has ever been reluctantly exercised. But it is the right and duty of this Court to set aside a verdict when it is against such a preponderance of the evidence that it is clearly wrong. Willis v. Lewis, 28 Tex. 185; Dimmitt v. Robbins, 74 Tex. 441, 12 S.W. 94.

In consequence of what we have said here and in our original opinion, not in conflict with the holding of the Supreme Court, the case is reversed and cause remanded to the trial court for another trial. Appellee's motion for rehearing is overruled.

YOUNG and CRAMER, Justices.

We concur in the remand of this cause solely upon the ground that the evidence as a whole, although it raises a question of fact for the jury, the jury's finding thereon is so against the preponderance of the evidence as to require a new trial.

With reference to the court's communication with the jury, that question has been settled by the opinion of our Supreme Court in 150 Tex. 468, 241 S.W.2d 977, and such holding is binding on us.