# JUNE, 1906.

### GULF, COLORADO & SANTA FE RAILWAY COMPANY v. MAGGIE MATTHEWS.

#### No. 1556. Decided June 6, 1906.

**1.—Contributory Negligence—Persons on Railway Track.**

Evidence considered and held not so conclusive of the fact that the injured person was lying down on, instead of walking upon the track, as to authorize the Supreme Court to disturb a recovery by plaintiff based on the latter hypothesis. (Pp. 67, 68.)

**2.—Contributory Negligence — Walking on Railway Track — Unnecessary Danger.**

One walking along a railway track, though not a trespasser, should, it seems, be treated as guilty of contributory negligence if he voluntarily chooses

the dangerous path upon the track itself when there is a safe one by the side of it; but the evidence here considered is held not conclusive that there was such alternative of a path out of reach of a passing train. (P. 68.)

### 3.—Evidence—Impeachment of Witness—Material Issue.

Under the rule that a witness may be contradicted as to relevant facts brought out on cross-examination, but not on collateral and irrelevant issues, the question whether he had communicated to others the facts testified to may become relevant and present an issue upon which he may be contradicted, or otherwise, according as the circumstances make his silence of probative value, or insignificant. (Pp. 71, 72.)

### 4.—Same.

The evidence presented the issue whether one who was found dead on the railway track in Fort Worth in the morning was killed while lying down intoxicated. There was testimony that, on the night before, he came to a hotel drunk, engaged a room, but left and did not return to occupy it. The only witness claiming to have seen him afterwards on that night was a clerk in another hotel, who testified that he occupied a room there that night, without registering, and left, sober, early in the morning. On cross-examination, this witness said that he had told the circumstances to only one other person, also a clerk in the hotel. Held, that it was competent, by way of impeachment, to prove (1) witness' knowledge of newspaper publications at the time of the death, showing that it was suspected to be from foul play; (2) that witness had heard and believed that the person to whom he claimed to have disclosed the fact was dead when witness testified; (3) and, by the testimony of such person, who had been erroneously reported dead, that the witness had not made to him such statement as he testified that he had. (Pp. 68–73.)

### 5.—Cross-examination—Hearsay as Affecting Conduct.

When the fact that the witness had not communicated to others his knowledge of matters to which he testifies may become material to his credibility because of circumstances calling upon him to make disclosure, he may be cross-examined as to mere rumor or newspaper reports coming to his knowledge and making it probable that he would have spoken at the time if he had possessed the information to which he testified. The issue is not as to the truth of the facts reported, but the effect of their communication on the witness' conduct. (P. 70.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

Maggie Matthews and others sued the railway company and had judgment. Defendant appealed and on affirmance obtained writ of error.

*Smith & Beaty, J. W. Terry* and *Chas. K. Lee,* for plaintiff in error.— That the evidence in this case is not sufficient to support a recovery: Gulf, C. & S. F. Ry. v. Matthews, 7 Texas Ct. Rep., 231; Bennett v. St. Louis & S. F. Ry. Co., 10 Texas Ct. Rep., 719; International & G. N. Ry. v. De Ollos, 8 Texas Ct. Rep., 211; Luna v. Missouri, K. & T. Ry., 7 Texas Ct. Rep., 497; Tucker v. International & G. N. Ry., 4 Texas Ct. Rep., 471 and 768; Galveston, H. & S. A. v. Faber, 77 Texas, 153; Missouri Pac. v. Porter, 73 Texas, 307; Murray v. Gulf, C. & S. F. Ry., 73 Texas, 304; Gulf, C. & S. F. Ry. v. Wilson, 69 Texas, 739; Texas & N. O. v. Crowder, 63 Texas, 502.

That one drunk or asleep on a railroad track is guilty of negligence per se: Louisiana, W. & E. Ry. v. McDonald, 52 S. W. Rep., 650; St. Louis & S. W. Ry. v. Shiflet, 58 S. W. Rep., 945; Houston & T. C. v. Sympkins, 54 Texas, 615.

That it is negligence for one to go on a railroad track and stand there till he is knocked off by a train. Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 89; Sanchez v. San Antonio & A. P. Ry., 3 Texas Civ. App., 91; Gulf, C. & S. F. Ry. v. York, 12 S. W. Rep., 69.

There is a clear distinction between impeaching a witness and discrediting his story. The testimony was not offered as affecting the general character of the witness, but as affecting the truth of the tale he told. It is an elementary rule of universal application that a party has a right to call witnesses for the purpose of contradicting material evidence given by a witness for his opponent. (Enc. Pleading and Practice, vol. 10, page 280.) In the language of a distinguished judge: "Where a witness has fabricated a story with circumstances, the disproof of the circumstances is generally the only possible way of disproving the material facts." (Enc. Pl. & Pr., vol. 10, p. 280.) Where a witness has given testimony which is material to the issue on trial, such witness is subject to direct contradiction upon any facts or circumstances tending to corroborate and strengthen his testimony. (Ency. Pl. & Pr., vol. 10, p. 280.) In case of a conflict of testimony either party may be allowed to show incidents connected with the facts in question which tend to render probable the truth of his evidence or to render improbable that of his adversary. (Abbott's Trial Brief on the Facts, sec. 308.) No fact or circumstance that bears directly on the truth or untruth of the testimony of a witness is collateral to the issue. Silence when the situation calls for utterance from those who know, is the strongest character of discrediting evidence, both as a matter of law and of fact. So appreciating, this witness Andrews (found by Columbus Williams) names one to whom he has told this remarkable story, only one, not his wife, who is living, and who will not corroborate him; not his employer, the proprietor of the hotel, also presumably alive; but one old gentleman whom he knows can easily be shown to have been an habitue of the hotel, in the long watches of the night, therefore one with whom he, the night clerk, naturally would talk. Such being the situation, that the old gentleman selected by the witness to be named as the only one he told, was dead or reported and believed to be dead, was a relevant and material fact and defendant was entitled to show it. Plaintiffs corroborate witness Andrews by showing that he told Wilkinson. He admits, however, he never told anyone else, though the situation suggested several others more naturally to be taken into his confidence, to wit: his wife, the proprietor of the hotel, the hotel register, the coroner, the peace officers, the widow and her friends (although asked by them about the matter), and the railroad. Is not the fact then that the one he names as his only confidant is supposed to be dead, the strongest character of circumstances to show he is fabricating his whole story, particularly in answer to plaintiff's attempt to corroborate the witness by naming the one to whom the solemn confidence was whispered? A party having introduced certain testimony to sustain his side of an issue, will not be heard to say the issue is immaterial, when the opposing party offers evidence to disprove the facts stated. (25 Pac. Rep., 698.)

The defendant was entitled to prove any fact that bore directly on

the probable truth or untruth of the testimony of the witness Andrews. Accordingly, the defendant was entitled to show either by him or by any other witness that he had kept absolute silence for five years about the matter he now claims to have remembered so clearly and distinctly. And defendant was also entitled to show in this connection that he was claiming to have told a person supposed to be dead, because the very circumstances of his naming one by whom, because dead, he could not be contradicted, itself discredits his testimony. This is particularly true when the plaintiffs themselves undertake to bolster their witness up by showing that he had talked to this particular party.

That Andrews had told no one about his knowledge of this occurrence would certainly weigh heavily against his testimony as a matter of legal construction and as a matter of common sense. To admit telling no one except one he believed to be dead, and so could not contradict him, is very much more suspicious and therefore clearly against the weight of his testimony and more clearly admissible. Where it is further ascertained that in fact the man, though supposed by Andrews and others to be dead, is in truth alive, and will swear Andrews never told him about the matter, the whole chain of evidence becomes more important, each link adding strength to the others, and to deprive the defendant of the right to make the proof seems almost tantamount to refusing to allow it to expose perjury. 10 Enc. Pl. & Pr., 280, 281, and numerous cases cited in notes; Pennybacker v. Hazelwood, 61 S. W. Rep., 153; Missouri, K. & T. v. Milam, 50 S. W. Rep., 421; Burton v. State, 21 Texas, 349; Evansich v. Gulf, C. & S. F. Ry., 61 Texas, 3-24; Abbott's Trial Brief on the Facts, p. 109, sec. 308; Evans v. State (Ala.), 19 So. Rep., 535; Davis v. Cal. Powder Works (Cal.), 24 Pac. Rep., 387; East Tenn., V. & F. Ry. v. Kane (Ga.), 18 S. E. Rep., 22; Butler v. Cornell (Ill.), 35 N. E. Rep., 767; Southern Bell Tel. Co. v. Watts, 66 Fed. Rep., 460; People v. Freeman, (Cal.), 28 Pac. Rep., 261; Benson v. New York & H. R. Ry. Co., 49 Atl. Rep., 693.

The circumstance that the man Wilkinson was supposed to be dead, in the light of Andrews' testimony, bore directly upon the probable truth of his story, and his credibility as a witness. Proof, therefore, showing directly that Andrews was under this impression was clearly admissible. That he believed Wilkinson dead is the strongest kind of testimony that when he said he had told Wilkinson he swore falsely, and was trying to bolster one false statement with another which could not be contradicted. Same authorities.

Silence if the situation called for a disclosure was certainly a circumstance admissible in evidence against Andrews. Therefore, any fact or suggestion bringing to his notice the necessity for a disclosure of what he knew, was a material and relevant and proper matter to go to the jury. For the purposes above stated, it was immaterial that the testimony was hearsay. The fact sought to be proved was that Andrews had information that would have made an honest man disclose what he knew, and it is wholly immaterial whether this information was or was not true.

*Wolfe, Hare & Maxey,* for defendants in error.—The right to contra-

dict a witness is the same whether the matter sought to be contradicted is introduced on direct examination, brought out on the crossexamination, or volunteered by the witness. 2 Wigmore, Evidence, sec. 1007; Dolson v. De Ganahl, 70 Texas, 620; McCartney v. Martin, 1 Posey, U. C., 149; Dillon v. Bell, 9 Ind., 320; Sellers v. Jenkins, 97 Ind., 437; Williams v. State, 73 Miss., 820; Blakey's Heirs v. Blakey's Executrix, 33 Ala., 619; Commonwealth v. Buzzell, 16 Pick., 158; Charlton v. Unis., 4 Grat., 61; Lambert v. Hamlin, 59 Atl. Rep., 941.

Proof of selfcontradiction on collateral matters will not be permitted. Drake v. State, 29 Texas Crim. App., 270; Askew v. People, 23 Colo., 446; Hildeburn v. Curran, 65 Penn., 63; Corn v. Buzzell, 16 Pick., 153; State v. Davidson, 9 S. D., 564; Sanders v. Railway Co., 99 Tenn., 130; Blakey's Heirs v. Blakey's Exec., 33 Ala., 619; Carter v. State, 133 Ala., 160; Langhorn v. Com., 76 Va., 1019; Stacer v. Hogan, 120 Ind., 220; Williams v. State, 73 Miss., 820; Hamberger v. Winkle, 164 Mo., 398; Johnson v. Spencer, 51 Neb., 198; Cohmes v. Winchester, 39 N. H., 16; People v. Chin Mook Sow, 51 Cal., 597; Woodruff v. Jones, 83 Me., 21; Zimmerman v. Kerney Bank, 57 Neb., 800; Stevens v. Beach, 12 Vt., 585; Attorney-General v. Hitchcock, 1 Exch., 99.

This rule is applied in the case of Texas Pacific Railway Co. v. Phillips, 91 Texas, 278, where it is said, "that fact did not tend to prove any issue involved in the case. The evidence made an issue before the jury which was not involved in the pleading of the parties, but which was made the basis of an attack upon the credibility of the witness Hartley by first examining him with regard to it and then introducing evidence to contradict his statements made with reference thereto. It is elementary that a witness can not be impeached by contradicting him upon an immaterial matter." See also: Gulf, C. & S. F. Ry. Co. v. Kezziah, 86 Texas, 91; Dimmitt v. Robbins, 74 Texas, 45; Sutor v. Wood, 76 Texas, 407; Noel v. Denman, 76 Texas, 306; Gulf, C. & S. F. Ry. Co. v. Johnson, 97 Texas, 260; Batcheller v. Besancon, 47 S. W. Rep., 296; Davenport & P. S. Ry. Co. v. Foster, 68 S. W. Rep., 299; Moore v. Moore, 73 Texas, 388; Gulf, C. & S. F. Ry. Co. v. Coon (Texas Sup.), 7 S. W. Rep., 492.

WILLIAMS, ASSOCIATE JUSTICE.—Some of the questions involved in this case were certified to this court by the Court of Civil Appeals and the answers given may be found in Ninety-ninth Texas, at page 160. Those answers hold, in substance, that the facts stated in the certificate justified the trial court in submitting to the jury the questions whether or not the evidence established an implied permission from the defendant for the use of its track by pedestrians, and whether or not deceased was guilty of contributory negligence in walking on the track. The conclusion that there was evidence authorizing the submission of these questions ends all inquiry into them which this court is empowered to make.

It is contended that the evidence in the record now before us shows conclusively that deceased, when struck by the engine, was lying upon the track and not walking upon it, as was stated in the certificate upon which we formerly passed. The charge of the trial court submitted

that question to the jury, telling them that plaintiffs could not recover if deceased was in fact lying upon the track. For this court to disturb the verdict for such a reason as this, it must be able to say that the evidence established the fact relied on so conclusively that the jury could not reasonably have found that it was not satisfactorily proved. This we can not say.

Another position taken by counsel for the defendant, a decision· of which was not involved in our answers to the certified questions, is that the deceased, even when treated as a licensee walking upon the track, is conclusively shown to have been guilty of contributory negligence, in that the evidence shows that he could have walked outside of the rails and out of danger as conveniently as upon the track. If the fact thus assumed could be treated by us as shown beyond dispute, we should feel constrained to hold with the defense. An implied permission, such as is claimed, to use a railroad track as a footpath may relieve the person enjoying it of the imputation of being a trespasser, but it does not relieve the place of its inherent dangers, nor exempt the traveler from the duty to act with ordinary prudence. When he voluntarily chooses the dangerous pathway instead of a safe one beside it, we can see no escape from the conclusion that he is guilty of negligence, if there be no justifying or excusing circumstances.

The authorities upon the subjects are cited and discussed in the opinion of the Supreme Court of Kansas in the case of A. T. & S. F. Ry. Co. v. Schwendt, 72 Pac., 573. See also Lewis v. G. H. & S. A. Ry. Co., 73 Texas, 507, 5 Thompson on Neg., sec. 6247.

But the question as to the negligence of the deceased in walking upon instead of outside the track was submitted to the jury and found against the defendant. And here, as upon the other points, the power of this court is limited to the inquiry whether or not the evidence conclusively established the fact relied on; and we find that there is evidence that there was not space to walk between the track and the edge of the embankment sufficient to have put the deceased beyond the reach of passing trains. The question was therefore one for the jury.

The trial court excluded from the jury some of the evidence offered by the defendant in its attack upon the credibility of Andrews, one of the plaintiff's important witnesses, which we are of the opinion should have been admitted. As the chief question is as to its relevancy, which depends upon a rather exceptional state of facts, a somewhat detailed statement is necessary to show its bearing upon the issues in the case. For this purpose alone and not as a criticism of the witness' testimony nor the expression of an opinion as to the weight the impeaching evidence should have, the following statement is made. The testimony of Andrews was produced for the first time at the trial now under review, by several depositions taken in the summer and autumn of 1903, the death of plaintiff's husband, J. L. Matthews having occurred in Fort Worth in May, 1899, and the suit having been brought in Grayson County in September of the same year. There had been several trials of the cause and two appeals prior to the last trial. Upon the second appeal the Court of Civil Appeals of the Fourth District had reversed a judgment in favor of the plaintiff, holding that the evi-

dence showed that Matthews was struck while lying upon the track and was therefore guilty of contributory negligence. That this was the case the evidence adduced by defendant in all of the trials tended to prove, while plaintiff attempted to show that Matthews, when struck, was walking on the track, in the exercise of a privilege to do so acquired by the public. As tending to support the defense by furnishing a reason for his lying upon the track, the question whether or not deceased was intoxicated became important; while the identity of Matthews with a person seen walking upon the track a few minutes before the train passed that killed Matthews was a circumstance essential to plaintiff's case, the Court of Civil Appeals having held that the evidence then in the record was not sufficient to show such identity nor to make an issue with defendant's evidence. Upon the question whether or not Matthews was drunk, evidence was introduced tending to show that at times he drank to the point of intoxication and that on the night before he was killed he was in that condition, and engaged a room in a hotel and left, saying he would return and occupy it, but did not do so; and, besides the testimony of Andrews, there is nothing to show his whereabouts or his condition until his body was found upon defendant's railway the next morning between six and seven o'clock, unless he was the person before referred to as walking upon the track. Andrews was clerk in another hotel and his statement, given with considerable detail, is in substance that about eleven o'clock of the night preceding the killing, a man, who gave his name as J. L. Matthews, engaged, paid for and occupied a room in the hotel for the night and, shortly before six o'clock next morning, left, going in the direction of some camping grounds near to defendant's railroad at the point where the body was found, to which witness, at his request, directed him. The witness stated that Matthews was then sober, and gave a description of him by size and dress which measurably corresponded with that which had been given by another witness of the person seen walking on the track and which, in the opinion of the Court of Civil Appeals on the present appeal, established that they were the same. The importance of his testimony is apparent.

The defense, by crossexamination and evidence offered, attempted to expose the statement of this witness as a fabrication. On crossexamination, the witness stated that he did not have Matthews to register at the hotel because he was drinking, but inquired for and got his name, in order to register it, and neglected to do so; that he heard the evening of the next day or the day after, of Matthews having been killed, and read an account of it in the newspaper, but, prior to his statement to plaintiff's agent referred to below, had never told his wife, the proprietor of the hotel, or any one else, of the facts stated, except that he had talked about it a few times with one F. W. Wilkinson. It further appears from his testimony that, at some time not shown, one Bell made some inquiry of him as to his knowledge of the matter, telling him that he was looking up evidence for plaintiff, and that he gave Bell no satisfaction and told him nothing. He gives his reasons for his silence, which, as their sufficiency will be a question for the jury and not for this court, need not be stated. He further

testified that his first disclosure of the facts to plaintiff was made to another agent representing her, who came to Fort Worth and stopped at the lodging house kept by his wife four or five nights in August, 1903, in a conversation that came up between them about people being killed by railroads, which brought to his mind the case of Matthews. It further appears that during the same month interrogatories were propounded to him by plaintiff which, with the cross interrogatories of the defendant, were filed in the court at Sherman, where the cause was pending, and upon them the defendant took out a commission to Tarrant County, where the witness lived, for the purpose of having his answers taken; that, on the same morning and after this commission was issued, the witness received a telegram from the agent of plaintiff, who had obtained his statement and who was at Sherman, requesting the witness to go to Dallas and call him (the agent) up; that he left for Dallas at twelve o'clock, spent the evening there and talked to the agent over the telephone, all that the latter said being that the defendant had obtained a commission to take his deposition and that he might as well return as they would take his deposition any way, and that plaintiff wanted to take it first.

The evidence to show these facts was admitted, and the defendant offered to show by further crossexamination of Andrews that, on the day Matthews' body was found or the day after, he read accounts in the newspapers and heard conversations of people about the hotel to the effect that it was suspected that Matthews had been foully dealt with and that the police were making an investigation. This was excluded, on the objection that it was not the best evidence of what the newspapers contained and was hearsay, irrelevant and immaterial.

The defendant also proffered testimony to show that before Andrews gave his deposition it had been reported in a newspaper in Fort Worth and was generally believed there that the man Wilkinson whom Andrews claimed to have told the facts to which he testified had been killed in Chicago; that Andrews had stated in his deposition that he did not know where Wilkinson was, and that the last he knew of him was that he was working at a hotel in Fort Worth; but had told a witness, who inquired of him concerning Wilkinson, that it was his (Andrews) understanding that Wilkinson was dead and had been killed in Chicago; and, in connection with this, defendant put Wilkinson, who was in fact alive, upon the stand and offered to prove by him that Andrews had never communicated to him the facts stated by him concerning Matthews. This evidence was excluded upon the objection that it was immaterial, irrelevant and hearsay.

The objection that the rumors and the reports in newspapers about Matthews' death, the suspicions concerning it and the proposed investigation of it were hearsay would plainly be good had it been offered as evidence of the facts reported, but such was not its object. Such significance as it had consisted wholly in the suggestion to speak, thus brought to Andrews' mind, to intensify the probability that he would have broken his silence had he known the facts to which he now testifies. If the fact that he had never communicated his knowledge was itself relevant, circumstances were equally so which tended to in-

crease its force by strengthening the inference sought to be raised, that one knowing such facts would naturally have mentioned them under such circumstances. But apart from the question as to their admissibility as affirmative evidence for the defense, the inquiries about these facts were addressed to the witness himself in cross-examination, and this we think the defendant had the clear right to do.

If the evidence of Wilkinson that Andrews had never mentioned the subject to him was admissible, the purpose being to thereby support the attack upon the credibility of Andrews' story, it was likewise admissible to intensify the force of that evidence by showing that Andrews believed that Wilkinson was dead when, in his deposition, he mentioned Wilkinson as the only person to whom he had ever communicated the facts known to himself. The question as to the admissibility of the rejected evidence therefore depends upon the further questions whether or not it was competent for the defendant to show (1) that Andrews had never told the facts of which he claimed to have had knowledge to any one, and (2) when Andrews asserted that he had told them to one person, to show that he had never done so.

It is contended for plaintiff and was held by the Court of Civil Appeals that, while the defense was permitted to crossexamine the witness as to communications made, the facts thus inquired about were collateral and irrelevant to the issues in the case and that it was not permissible to contradict his answers about them, the contention resting upon the familiar rule that a witness who has been asked on cross-examination if he has not made specified statements concerning irrevelant matters and has denied making them can not be contradicted by evidence that he has done so. But that character of testimony tends only to show an inconsistency between two statements neither of which bears upon facts in issue in the case; in other words, to show that the witness, in some particular instance, has been guilty of falsehood about a matter immaterial to the case on trial. It is not permitted for the reasons that witnesses are not expected to come prepared to sustain all the statements they have made upon subjects not involved in the controversy, and because its admission would involve the trial of too many issues as to the truth of the statements, the determination of which would at last have little effect upon the decision of the cause.

The effort here is to establish the falsity of the witness' testimony material to the case by circumstances, one of which is that that did not happen which would naturally be expected to have happened if the tale were true, i. e., an earlier disclosure of the facts known to the witness. This evidence is directed at the very facts in issue in the case and not to the proof of irrelevant facts. When the existence of facts material to a plaintiff's case are put in issue by the defense, the truth of the testimony of witnesses to those facts is also put in issue; and evidence which has a tendency to show the untruth of such testimony is as relevant to the issues as testimony of other witnesses denying that the facts exist. As was said by Judge Stayton in Evansich v. Gulf, C. & S. F. Ry. Co. (61 Texas, 28): "As all issues of fact must be determined by the testimony of witnesses, it would seem that any fact which bears upon the credit of a witness would be a relevant

fact and this whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, interest, want of memory, or other like fact."

Evidence therefore which bears upon the story of a witness with sufficient directness and force to give it appreciable value in determining whether or not that story is true can not be said to be addressed to an irrelevant or collateral issue. It is directed to the issue as to the existence of the material facts to which the witness has testified. The evidence that a witness has kept silent concerning material facts is often as relevant and sometimes as strong as an affirmative statement contradictory of his testimony would be. The relevancy of evidence of this character therefore, is not tested by the rule applied by the Court of Civil Appeals, but by its probative force or value. That may be so slight as to make the fact offered irrelevant, in the legal sense, and when this is true the circumstances should be excluded as too remote. It is a very common thing in the trial of cases to show that a witness testifying to some fact has never before disclosed his knowledge, or that he has failed to do so on some particular occasion. The value of such a fact depends upon the strength of the presumption or expectation that the witness would have disclosed his knowledge had he possessed it. When it is shown that he was silent when it was his duty to speak, his omission may have great effect in weighing his testimony. So if it can be made to appear, that, while there was no duty to speak, the fact was of such a nature or the circumstances such that one situated as the witness was would, in the natural order of things, have mentioned the fact if within his knowledge, his failure to do so bears sufficiently upon the question of his veracity to entitle it to admission. McKinney v. The State, 31 Kan., 570; Alabama G. S. R. Co. v. Brooks, 135 Ala., 401; State v. Martin, 107 N. C., 890; State v. Burton, 94 N. C., 947; State v. McQueen, 46 N. C., 177.

Many authorities upon the subject are cited in the "Encyclopaedia of Evidence," by Camp and Crowe, volume 7, pp. 152-155. They are generally cases in which witnesses testifying to facts are shown to have omitted to disclose them on some particular occasion when disclosure was naturally called for by the circumstances, and in some of them such evidence was rejected because the occasion did not appear to have called for any statement.

If the fact of Andrew's silence stood alone it could hardly be said to have sufficient significance, of itself, to require the trial court to allow more than the crossexamination respecting it. The mere fact that the clerk at a hotel has not said that a particular guest spent a night there, although that guest was to his knowledge killed the next day, when he did not know that the fact was of any importance, could hardly be justly regarded as affecting his veracity. But other circumstances were adduced and these the defendant was entitled to have the jury consider, and along with them the facts drawn out in crossexamination that for so long a time he had never mentioned the facts to those nearest to him, but had told them to a person supposed to be dead. The course which the testimony took gave to this fact greater pertinency than it might otherwise have had. There is such connection

between the circumstances brought out by the defense as to make it necessary that all of them be considered together in order that their combined force may be determined, the condition being one often seen in cases of the circumstantial evidence where facts unimportant by themselves acquire force from their relation to others. When all of the facts are examined together the question whether or not Andrews in fact told Wilkinson became of more or less importance. His statement that he had done so, if left uncontradicted, might be regarded by the jury as supporting his testimony. (Ins. Co. v. Eastman, 95 Texas, 37; 1 Greenl. Ev. (16th ed.), by Wigmore, sec. 469b.) It was therefore competent we think for the defendant to show that he had never made the communication claimed by him. (State v. McKinney, supra.) The effort of the defendant was not to show a statement to Wilkinson contradictory of his testimony, but to maintain its contention that he had never told any one; and that fact being relevant, the defendant had the right, we think, to meet his apparent effort to break its force.

During the examination of Wilkinson he stated before the jury that he had never heard of a man named Matthews being run over and killed at the place where plaintiff's husband was killed, and it is contended that this showed all that the excluded testimony would have shown and renders the ruling of the court harmless. If the exclusion of this statement was not involved in the ruling which the court made, which is not clear, it is nevertheless true that the defendant had not the right to insist, nor the jury the right to consider, that it had the effect, now sought to be ascribed to it, of supplying proof of the further fact, proof of which the court expressly refused to admit on the ground that it could not be considered as evidence. To so treat it would imply the right of a jury to disregard the ruling of the court.

The assignments of error based upon the use in argument by plaintiff's attorney of a part of a deposition which, by oversight, had not been offered in evidence, and upon the fact that newspaper accounts of the case were read by the jury need not be discussed, as they present matters which will not affect another trial.

All of the other grounds of error have had careful attention and in none of them has there been found reason for reversing the judgment.

*Reversed and remanded.*