BENTSON, Administrator, Appellant, vs. BROWN, Respondent.

*March 13—April 7, 1925.*

*Automobiles: Gross negligence in operation: What constitutes: Recovery on complaint charging ordinary negligence: Operation of automobile in violation of statute: Children crossing streets: Look-and-listen doctrine: Contributory negligence: Sudden emergency: Question for jury: Verdict: Five-sixths jury law: Polling jury: Harmless error.*

1. A complaint which characterized the conduct of the driver of an automobile as reckless, negligent, and unlawful, but 'no language charging the conduct complained of as wilful, wanton, or intentional, does not aver such wilful or intentional disregard of the rights or safety of others as to constitute gross negligence. p. 632.

2. To constitute gross negligence there must be a wilful intent to injure, or such reckless and wanton disregard of the rights and safety of another or his property and a willingness to inflict injury as the law deems equivalent to such intent. p. 633.

3. Where a complaint charges only ordinary negligence or want of ordinary care and the case is tried on such theory, there can be no recovery on the ground of gross negligence. p. 633.

4. Automobiles are not dangerous instrumentalities, the operation of which in violation of statute is necessarily gross negligence barring the defense of contributory negligence, though the act is negligence *per se.* p. 634.

5. While the look-and-listen doctrine, applicable to persons approaching a railroad track, does not extend to pedestrians using a city street in which ordinary traffic is going on, persons crossing a road much traveled by automobiles must make observations and take care for their own safety. p. 635.

6. The question whether a boy struck and killed by an automobile exercised ordinary care in crossing a road is for the jury, whose finding of contributory negligence was warranted by testimony tending to show that he did not look or that he continued across the road after seeing an approaching car. p. 635.

7. The rule that one required to act suddenly in the face of imminent danger need not act with the same care as if he had full opportunity to exercise his reasoning faculties does not apply where his contributory negligence led him into the emergency. p. 636.

8. Where the existence of negligence or contributory negligence is uncertain, the question is one of fact for the jury, whether the uncertainty arises from conflict in testimony or undisputed facts from which fair-minded men will honestly draw different conclusions; and a verdict that reasonable men might find and which is supported by any credible evidence cannot be disturbed, or the judgment sustaining it be set aside, unless clearly wrong. p. 636.

9. An instruction that the jury could answer any question submitted if ten or more of them agreed is erroneous as not requiring that the same ten agree to the answer to each question; but when the verdict was read to the jury, and they indicated, when asked by the court, that it was the verdict of each of them, and no poll was requested, an instruction that if ten or more agreed they could answer any question submitted was not prejudicial error, the presumption being that the verdict was agreed to by all. p. 637.

CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Vernon county: S. E. SMALLEY, Judge. *Affirmed.*

For the appellant there was a brief by *Graves & Gulbrandsen* of Viroqua, and oral argument by *C. W. Graves.*

For the respondent there was a brief by *C. J. Smith* of Viroqua, attorney, and *Lines, Spooner & Quarles* of Milwaukee, of counsel, and oral argument by *Mr. Smith* and *Mr. Charles Quarles.*

JONES, J. This is an action for damages for the loss of life of Victor, who was twelve and one-half years old and the son of the plaintiff. The defendant was driving southwest on state trunk highway No. 27 *en route* to his home in Viroqua and was approaching a turn on the road in front of the Round Prairie schoolhouse. According to the testimony of the defendant and the person riding with him, the defendant was driving at the rate of about twenty-five miles an hour, but as he approached the turn he slowed down to about twenty miles an hour. The schoolhouse in question faces south down the road on which the defendant was about

to turn, and at this particular time, about noon on the 7th day of November, 1923, the children were just emerging from the schoolhouse. The deceased and three other boys came out of the schoolhouse and started to run to their ball field, which was across the road in a southeasterly direction from the schoolhouse. The defendant saw the boys coming toward him when they were some distance away, but as he proceeded to turn to the south they left his line of vision, which was slightly obstructed by the passenger who was seated upon his right. The defendant testified that while making the turn he was watching the road, and when the turn was almost completed suddenly perceived the deceased in front of the moving car, and that before he could more than put on the brake the car struck the boy, and he was dead when the car stopped sixty-five feet further on.

The testimony of the boys who accompanied the deceased was to the effect that one of them said that he would beat the deceased to the ball field and that they all started running; that as they started across the road some one of them shouted, "There comes a car," though the nearest boy to the deceased swore that he did not hear this statement; that the companions of the deceased stopped at once by throwing themselves on the ground or catching the guy-wire of a near-by telephone pole, but that the deceased, who was ahead, continued across the macadamized road and was struck by the approaching car while in the middle of the roadway. Several girls who were sitting under a tree in the school yard and who witnessed the accident stated that they heard some one call out that a car was coming though they did not know who had done so; that at the time this statement was made the deceased was already at the edge of the road. Most of the witnesses state that the car was going "fast" or "as fast as some of them go." The jury found that the defendant had violated certain highway rules which constituted negligence and that this negligence was

the proximate cause of the accident. They also found that the deceased was guilty of contributory negligence, and on this verdict the court entered judgment for the defendant.

There is discussion in both briefs relating to the negligence of the defendant. In the argument of counsel for the plaintiff especial stress is laid on the fact that Victor was dragged sixty-five feet, and it is claimed that the car must have been driven faster than twenty miles per hour when the accident occurred. Much reliance is placed on the fact that the defendant failed to pass to the right of the center of the intersection and on the claim that he failed to keep a proper lookout and violated the statute regulating the speed of a vehicle passing school grounds. The jury found that he failed to pass to the right of the center of the intersection; that he failed to properly reduce the speed; that he failed to use ordinary care in keeping a proper lookout; and that he failed to sound the horn as he approached the intersection. There was undoubtedly sufficient evidence to support these several findings and it becomes unnecessary to state or discuss in detail the evidence which tended to show the defendant's negligence. The claim is made, although not much argued in the brief, that gross negligence was proven and that for that reason contributory negligence was no defense. But there are several answers to this claim. There was no allegation of gross negligence in the complaint and the case was tried on the theory of ordinary negligence. This appears not only from the pleadings but from the special verdict, from the requests made by the plaintiff as to the form of the special verdict and for instructions. The only words in the complaint which could be construed to hint toward gross negligence were "reckless, negligent, and unlawful" which were used to characterize the conduct of the defendant. There is no language charging that the acts complained of were wilful or wanton or intentional. It cannot be said that there are any averments in the pleadings showing such wilful or intentional disregard of the rights

or safety of others as are necessary to constitute gross negligence. "It is the settled law of this state that in order to constitute gross negligence there must be either a wilful intent to injure, or that reckless and wanton disregard of the rights and safety of another or of his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure." *Willard v. C. & N. W. R. Co.* 150 Wis. 234, 136 N. W. 646; *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161; *Lemma v. Searle,* 153 Wis. 24, 140 N. W. 65. It has been several times held by this court that where the complaint charges only ordinary negligence or want of ordinary care and the case is tried on that theory, there can be no recovery on the ground of gross negligence; that there is an essential difference between the two causes of action, and that the defendant is entitled to know the nature of the cause of action relied on. *Lemma v. Searle,* 153 Wis. 24, 140 N. W. 65; *Astin v. C., M. & St. P. R. Co.* 143 Wis. 477, 128 N. W. 265; *Turtenwald v. Wis. Lakes I. & C. Co.* 121 Wis. 65, 98 N. W. 948; *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536; *McClellan v. Chippewa Valley E. R. Co.* 110 Wis. 326, 85 N. W. 1018. Moreover, it should be said that, although it is settled that the defendant violated the statutes in several respects, his emotion and conduct after the accident were quite inconsistent with any theory of wilfulness or intentional wrongdoing.

It is contended by the counsel for the plaintiff that the operation of the automobile by the defendant was in such flagrant disregard of law as to make the automobile of the defendant a dangerous machine. The inference sought to be drawn is this: that when an automobile is driven carelessly and in violation of a statute or statutes it is to be classed as a dangerous instrumentality; that as in the case of dynamite and firearms, such use in violation of a statute is to be regarded as gross negligence, depriving the wrongdoer of the defense of contributory negligence under the

rule declared in *Pizzo v. Wiemann,* 149 Wis. 235, 134 N. W. 899. But it is too well settled in this state to call for discussion that automobiles are not to be so classed. *Hopkins v. Droppers,* 184 Wis. 400, 198 N. W. 738; *Crossett v. Goelzer,* 177 Wis. 455, 188 N. W. 627; *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016. It is also well settled that when one operates an automobile in violation of a statute causing injury to another, the act is negligence *per se* but not necessarily gross negligence, and that unless gross negligence is established the defense of contributory negligence is available. *Hopkins v. Droppers, supra; Ludke v. Burck,* 160 Wis. 440, 152 N. W. 190.

We all know of the shocking loss of life which is daily caused by the use of motor vehicles by careless and incompetent drivers. We also know how greatly such vehicles contribute to human comfort and human welfare when they are properly managed. Of course they may be so managed as to subject the operator to the consequences of his gross negligence. But, considering the numerous provisions in the statutes regulating the use of automobiles and the manner in which even careful persons use them, it would be a harsh and unpractical rule that should attempt to impose on the driver or owner violating one of the provisions the heavy burdens consequent to gross negligence. In the present case several provisions of the statutes were violated, but that is not unusual since in most of the automobile collision cases which come before us several violations are alleged in the complaint.

In the oral argument and in the brief counsel for the plaintiff have argued with all the earnestness and ability which the tragic occurrence would naturally inspire, that the finding of the jury as to contributory negligence should have been set aside. It is argued that Victor did not see the approaching car. There is no direct evidence that he did, but three of the boys who were running with him saw it and avoided any collisions, as above stated. The boy Thorkel-

son, as they were running, said to Victor, "I will beat you." The same boy shouted "There comes a car." This was heard by two of the boys. Three girls who were sitting in the school grounds under a tree also heard this exclamation and saw the car approaching. Victor was a bright, active boy of a little more than usual height, who had attended the school for four years and knew the highway was a much traveled road, and of course knew the danger incident to crossing it without looking for passing cars. It is true, as claimed by the plaintiff's counsel, that the "look and listen" doctrine which is applied to persons approaching a railway track is not extended to persons who are using a city street in which ordinary street traffic is going on. *Klokow v. Harbaugh,* 166 Wis. 262, 164 N. W. 999. The law only requires that the pedestrian shall use ordinary care, and he may presume that others will also exercise a proper degree of care. But there is no rule of law that those crossing a road much traveled by automobiles need make no observations or take no care for their own safety. Under the testimony the jury may have believed, and had the right to believe, either that Victor did not look or that he saw the approaching car and continued his race hoping to pass it safely. In either case it was for the jury to say whether he was in the exercise of ordinary care. What is ordinary care depends on the attending circumstances. In this case the jury were told that it meant such care as ordinarily prudent and careful children of the same age, intelligence, and experience as Victor Bentson had on that day, ordinarily would exercise under the same or similar circumstances, and that it was his duty to exercise that amount of care to avoid injury. They were also told that on the question of contributory negligence the burden of proof was on the defendant to satisfy them to a reasonable certainty by the preponderance of the evidence. Counsel for the plaintiff argue that Victor was confronted by such an emergency that he could not act with deliberation and therefore could not be

held responsible for not choosing the best means of escape from danger. It is undoubtedly true that when one is required to act suddenly and in the face of imminent danger he is not required to act with the same care as if he had full opportunity to exercise his reasoning faculties. But this rule has no application where one's contributory negligence has led him into the emergency. *Liermann v. C., M. & St. P. R. Co.* 82 Wis. 286, 52 N. W. 91; *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 58 N. W. 393; *Dummer v. Milwaukee E. R. & L. Co.* 108 Wis. 589, 84 N. W. 853. In this case there was a fair trial. The physical facts relating to the road and the school grounds, the negligence of the defendant, the manner in which Victor and the other boys approached the highway, the opportunity for seeing the approaching car, the warning given and heard by others, the avoidance of collision by the other boys, were all shown with but little conflict in the evidence. The jury found that want of ordinary care on the part of Victor proximately contributed to produce his death, and the verdict was approved by the trial court. Can this court set that verdict aside without departing from well established rules?

It is the rule declared by the United States supreme court and followed by many decisions of this court that "where there is uncertainty as to the existence of either negligence or contributory negligence the question is not one of law but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." *Richmond & D. R. Co. v. Powers,* 149 U. S. 43, 13 Sup. Ct. 748. So it has often been held by this court that if the verdict arrived at is one that reasonable men might find, it is not the duty of the court to disturb the decision of fact which the law has confided to the juries, not to the judges; and that if there is any credible evidence to support the verdict it cannot be disturbed, and that the judgment of the trial court sus-

taining the verdict should not be set aside unless clearly wrong. In negligence cases these rules are more often invoked by plaintiffs than by defendants, but they have become an essential part of our jury system and they apply to both alike.

The distressing circumstances under which this bright boy met his death appeal very strongly to our sympathy, but we do not see how we can set aside the verdict of the jury without disregarding well settled rules of law.

Exception is taken to the following instruction:

"As you have heretofore been told, it is now the law that a verdict may now be returned or an answer made to any question submitted, in civil jury cases, where five sixths of the jury agree thereto; and the result of this law is that if any ten or more of your number agree, you may answer any question submitted to you and return a verdict accordingly, in a civil jury case such as the one we are now trying; but until ten or more of your number are agreed upon the answer that should be made to each question submitted, you cannot answer the question; and this instruction applies to each of the questions submitted to you in this verdict."

Under the decision in the case of *Dick v. Heisler,* 184 Wis. 77, 198 N. W. 734, this instruction was erroneous. When the jury returned the verdict it was read to them and they were asked by the court if it was their verdict and the verdict of each of them, and they indicated that it was. No poll of the jury was requested, and it must be presumed that the verdict was agreed to by all of the jury, hence the instruction was not prejudicial error. *Dick v. Heisler, supra; Kosak v. Boyce,* 185 Wis. 513, 201 N. W. 757.

*By the Court.*—Judgment affirmed.

CROWNHART, J. (*dissenting*). At the place of the accident there was a highway running east and west. Intersecting this highway, but not crossing it, was a highway running north and south. The defendant was driving west on the east-and-west highway and turned to go south on the

north-and-south highway. Connecting the two highways was a curved highway cutting the corner between them. At the north of the north-and-south highway were school grounds which extended easterly along the east-and-west highway four or five rods. Before he reached the school grounds the defendant noticed some twenty school children coming out of the schoolhouse toward the highway. He was driving at the rate of twenty-five miles an hour, according to his own testimony, and slackened his speed around the curve to about twenty miles an hour. There was no obstruction to his vision, and he could see plainly at all times the road to the front of him and to the right as he was making the turn, and he saw the children all the time until they got into the road. As he rounded the turn, and just as he crossed the line of the east-and-west highway, he struck the deceased boy with the front of his car, dragging him some sixty-five feet, and resulting in the instant death of the boy.

The jury found that the defendant violated sub. (3), sec. 85.01, Stats., in that he did not keep to the right of the center of the highway intersections in making the turn, and that he violated sub. (2), sec. 85.08, in that he failed to reduce the speed of his automobile to such a rate as to tend to avoid danger of accidents. The jury further found that defendant failed to exercise ordinary care by failing to keep a proper lookout as he approached the place of the accident, and that the defendant failed to sound his horn as he approached the intersections of the highways. The jury found that each of these violations of the statutes and acts of negligence was a proximate cause of the death of the boy.

Besides the findings of the jury, it stands admitted in the evidence that the plaintiff passed the school grounds at a rate of speed of at least twenty miles an hour, which is also a violation of sub. (2), sec. 85.08, which limits such speed to twelve miles an hour. The sections cited are penal statutes.

The deceased was a boy twelve and one-half years old, who, in company with other boys, left the schoolhouse to cross the highway to play-grounds on the opposite side. The boys were racing, with the deceased slightly in the lead. His companions saw the car and were able to stop in time to escape injury, but the deceased evidently did not see the car and was instantly killed.

Sec. 2405m, Stats., provides, among other things, that in any action brought to this court by appeal, if it shall appear probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment appealed from, remit the case to the trial court for a new trial, and direct proper amendments to the pleadings.

I think justice has miscarried in this case, and that the case should be reversed for a new trial.

To my mind the defendant was guilty of gross negligence. The plaintiff failed to allege gross negligence, and I think for that reason, and that reason only, he is denied relief. I would not think that mere excess speed would ordinarily be gross negligence; or mere failure to keep a lookout; or failure to keep to the right of the intersection of the highways; or failure to observe the statutory requirement to limit the speed to twelve miles an hour while going by school grounds; or failure to blow the horn when required. But where all these acts of negligence are combined under circumstances that are wholly inexcusable, I think it makes a clear case of gross negligence. I think I may also safely say that where a person drives by school grounds and observes children running into the highway from the grounds, in plenty of time to reduce his speed to the lawful requirements, and by reason of such failure to reduce his speed kills a child, it presents a question of gross negligence for the consideration of the jury.

This court has frequently defined gross negligence as "such a degree of rashness or wantonness . . . as evinces a total want of care for the safety" of others (*Ryan v.*

*La Crosse City R. Co.* 108 Wis. 122, 131, 83 N. W. 770) ; "wanton or reckless disregard of life" (*Raasch v. Milwaukee E. R. & L. Co.* 151 Wis. 170, 171, 138 N. W. 608) ; "reckless and wanton disregard of the rights and safety of another" (*Willard v. C. & N. W. R. Co.* 150 Wis. 234, 136 N. W. 646). "To constitute gross negligence the act or omission causing. the injury must itself have been wanton or wilful." *Kuchler v. Milwaukee E. R. & L. Co.* 157 Wis. 107, 109, 146 N. W. 1133.

The act of the defendant in driving at an unlawful rate of speed by school grounds was intentional, wilful, utterly reckless, and in disregard of human life.

Thus, if this remedial statute, sec. 2405*m*, is ever to be availed of in the interest of justice, I think this instant case calls loudly for action under it.