## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. McCREARRY et al.
### (No. 9853.)

Court of Civil Appeals of Texas. Dallas.
March 19, 1927.

Rehearing Denied June 25, 1927.

1. **Appeal and error** ⚙⟹1002—Findings of jury on conflicting testimony are adopted on appeal.

Appellate courts adopt findings of jury in reference to issues on which testimony is conflicting.

2. **Railroads** ⚙⟹400(14)—Whether trainmen could have discovered peril in time to avoid injuring one running in front of train held for jury.

In action against railroad for death of person caught between cars on side track and main track who ran in front of passing train, evidence as to whether train crew could have discovered deceased's peril in time to have avoided collision and death by exercise of ordinary care *held* to make issue for jury.

3. **Railroads** ⚙⟹386—One is not relieved of reckless running in front of train to avoid peril, unless peril resulted solely from railroad's negligence.

Before person killed may be relieved of heedless and reckless act in dashing in front of rapidly moving train, it must appear not only that he was frightened because of perilous position, but that perilous position was caused solely through railroad's negligence.

4. **Negligence** ⚙⟹72—One who voluntarily puts himself in place of danger cannot plead defense of sudden peril.

Danger resulting from use of perilous place is one which person must anticipate, and one voluntarily putting himself in such place cannot plead defense of sudden peril in action for injuries.

5. **Negligence** ⚙⟹66(2)—Person in known dangerous position is under duty to take precautions to guard against peril.

Dangers resulting from known use of or situation in perilous position or location must be anticipated and guarded against by proper care and precaution.

6. **Railroads** ⚙⟹356(1)—One who ate lunch at place between main and side track, where persons resorted at lunch hour, held licensee as to railroad.

One who ate lunch in place between main track and refrigerator cars standing on side track *held* licensee as to railroad, in action for death, where those working at adjoining shed and neighboring orchards were in habit of resorting to such locality during lunch hour.

7. **Railroads** ⚙⟹386—Person running in front of train to avoid being caught in position voluntarily assumed held not relieved from negligence by sudden peril.

In action for death of one who voluntarily placed himself between cars on side track and main track of railroad at time when he must have known train would shortly pass, deceased in dashing in front of moving train *held* not relieved from contributory negligence by existence of condition of peril, inasmuch as perilous position was brought on at least partly by defendant's negligence.

8. **Negligence** ⚙⟹72—One whose own negligence contributes to perilous position is not relieved from exercise of ordinary care.

Rule that one required to act suddenly in face of imminent danger need not act with same care as if he had full opportunity to exercise reasoning faculties does not apply, where person's own negligence contributes to perilous situation.

Appeal from District Court, Henderson County; Ben F. Dent, Judge.

Suit by Mrs. Myrtle McCrearry, for herself and as next friend of J. L. McCrearry, her minor son, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

E. B. Perkins, of Dallas, Richard & A. P. Mays, of Corsicana, and E. A. Landman, of Athens, for appellant.
Sam Holland, of Athens, and J. D. Pickett, of Palestine, for appellees.

JONES, C. J. This suit was filed in the district court of Henderson county by Mrs. Myrtle McCrearry for herself and as next friend of J. L. McCrearry, her minor son, appellees, against the St. Louis Southwestern Railway Company of Texas, appellant, to recover damages for the alleged negligent death of the husband and father, J. H. McCrearry, in Henderson county, Tex., on the 8th day of July, 1925. A trial of the case resulted in judgment of $3,000, apportioned $2,000 to Mrs. McCrearry and $1,000 to the minor. The appeal is duly perfected to this court.

The facts developed at the trial are: The deceased, J. H. McCrearry, the husband of Mrs. McCrearry and the father of the minor, on the date of his death was engaged in picking peaches in an orchard near Nash, a flag station on appellant's railway in Henderson county, and had been so engaged for two or three days previous to the accident in which he lost his life. There is at Nash a small shed used as a depot, but no agent: there is also a shed about 96 feet long, built and constructed along by, and in close proximity to, the side track of appellant's railroad at said place. This shed is east of the depot, and both of these structures are on the south side of appellant's tracks. Appellant's line runs approximately east and west at this place, the side track making off from the main track west of the depot and extending parallel with it for some distance

east of the fruit shed. The distance between these tracks in the vicinity of the depot and the fruit shed is 14 feet, measured from the center of the main track to the center of the side track. On the occasion in question, there were from three to four or five refrigerator cars sitting on the side track extending beyond the peach shed at either end of same. The length of these cars is from 36 to 40 feet. A county pike road adjacent to the right of way extends east and west along the north side of the right of way and crosses the railroad track about a half a mile west of the depot. A small store stands just north of the pike and nearly opposite the depot. West of the peach shed a traveled wagon road crosses the main line and side track going east and west, and has been regularly used as such for some years. The distance from the west end of the shed to the center of this road is 33 feet. This is not a county road, but the railroad has placed the usual warning sign announcing this crossing. Some 300 feet south of the depot, another similar road crosses these tracks. It does not appear, however, that there is the accustomed warning sign at this crossing. On the morning of the accident the deceased worked in the orchard until noon, when he traveled about a half a mile from where he was working to the store, purchased his lunch, and crossed over to the first of the said refrigerator cars from the west, where he sat down in the shade of the car, near its west end, and ate his lunch. This placed him in the space between the two tracks. During his meal he engaged in conversation with another man until he had finished his meal, and some other employees from the same orchard, who had eaten their lunch near the same place, called to him that it was work time, when he walked nearer the east end of this same car, where he drank from the drippings from the melted ice of said car. At about the time he finished drinking the approaching east-bound passenger train, that had not signaled a stop at this station, was first discovered by him, being perhaps not over 50 feet away. He started on a fast run east between the main track and the refrigerator cars, and after he had run some distance, but before he had reached the east end of the cars on the side track, he suddenly turned to the north and attempted to cross the track in front of the moving train, when he was struck by the engine, knocked clear of the track on its north side, and received injuries from which he died a few hours afterwards. These tracks and the space between had been used for about a space of 20 years by pedestrians who had occasion to travel this direction for some distance both east and west of the peach shed. The use was much more frequent during the few weeks in summer of the season for marketing peaches. Frequently during this season those working either at the peach shed or in the neighboring orchards would eat their lunches in the shade of the refrigerator cars that were usually standing in the vicinity of the shed and likewise drink from the drippings of the melting ice from such cars. The evidence is undisputed that the engine of the approaching train sounded the whistle from once to a number of times, some witnesses testifying to a whistle for the station as well as three different whistles for the three crossings west of the shed and others testifying not to have heard the whistle on all of said occasions.

[1] The speed of the train from the time it passed the depot until it struck the deceased is variously estimated by the witnesses, the minimum speed testified to being 9 miles per hour and the maximum 40 miles per hour. These witnesses, however, may be divided into two groups, one placing the speed from 9 to 15 miles per hour and the other group placing it from 30 to 40 miles per hour. The schedule time of this train at Nash was 1 p. m., and it was on time on this occasion. The evidence as to the ringing of the bell on the engine as it approached and passed the depot is conflicting. The distance the train ran after it struck deceased is also conflicting, ranging in distance from the length of the train, which consisted of the engine, tender, express, and baggage car, and from three to four or five coaches, this not being certain, to about one-third of its length. We adopt the finding of the jury in reference to these issues, and find that the train was making a speed of 20 miles an hour at said time and that the bell was not rung.

Appellees' pleadings as to negligence are very full and furnish a basis for all the issues submitted by the court. Appellant by its pleading, by timely exceptions to the issues submitted, and by proper assignments of error, has raised all the issues herein discussed. Those findings of the jury that are essential to the disposition of this appeal are as follows:

The bell on the locomotive was not rung from a distance of not less than 80 rods from the crossing at the peach shed, and the failure to do so was negligence, which was the proximate cause of the deceased's death.

The rate of the speed of the train when it struck deceased was 20 miles per hour, and it was negligence to operate said train at such rate of speed, which negligence was the proximate cause of deceased's death.

The railroad track and the space between the tracks at the place where deceased was struck were commonly used by pedestrians with the knowledge of appellant and its employees, and the deceased was not guilty of negligence in walking between said tracks at said time and place.

Under the circumstances of the situation, an ordinarily prudent person, situated as deceased was and with knowledge of the approaching train, would not have attempted,

under the circumstances, to cross in front of said train.

The operatives of the train before the collision did not discover the deceased and appreciate and realize his peril in time to avoid the collision and death, by the exercise of ordinary care to use all the means at hand, consistent with the safety of the train and the passengers thereon, to prevent said collision and death.

On an issue submitted at the request of appellant: The deceased did not use ordinary care and prudence for his own safety in his attempt to cross the railroad track in front of the approaching train.

On issues submitted at the request of appellees: The deceased, when he became aware of and discovered the approach of said passenger train, became so frightened and terrorized as to render him incapable of rational and prudent action with respect to his own safety; that such fright or terror was caused by the negligence of appellant; and such fright or terror on the part of deceased was reasonably justified under the circumstances—that is, a person with ordinary foresight and prudence similarly situated would have become so frightened and terrorized.

Of appellant's numerous assignments of error, we find it necessary for a disposition of this appeal to discuss only two, viz.: (1) That the court erred in refusing appellant's request for a peremptory instruction presented to the court at the close of the testimony; and (2) that the court erred in submitting the issues given at the request of appellees for the reason that the evidence disclosed as a matter of law deceased was guilty of contributory negligence that proximately contributed to the perilous position in which he found himself by the approaching train.

[2] The first of these assignments we overrule, for the reason we are of the opinion that the evidence raised the issue of discovered peril, when viewed in the light of all the evidence and the circumstances surrounding the deceased at the time he was struck by the train. While the testimony of the engineer discloses the fact that, at the time he actually discovered the deceased between the tracks and realized his danger, he could not have stopped the train in time to have avoided the injury, yet he could have seen deceased some distance back from the place he testified he saw him and at a place where perhaps the collision with deceased might have been avoided. Under such circumstances, it was for the jury to determine the issue of discovered peril. This issue was properly submitted to the jury and determined by the jury in favor of appellant. T. & P. R. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410. This assignment of error is overruled.

Was there error in the submission of the issues comprehended in the second assignment of error? The undisputed evidence shows that the deceased dashed in front of a train that he knew was rapidly moving, and by reason of such act lost his life. The undisputed evidence further shows that the deceased with safety could have gotten between two of the box cars or under one of them and been in a place of perfect safety. The jury found that in the act of attempting to cross the track in front of the moving train the deceased was guilty of negligence. In fact, when this act is viewed from the standpoint of what the act of an ordinary prudent man in possession of his faculties would have been under similar circumstances, no other finding could have been made by the jury. The jury also found, in effect, that at the time the deceased first discovered the train he was in such a position of peril that called for immediate action on his part; that this perilous position was caused by the negligent rate of speed at which the train was being operated; that by reason of his perilous position deceased was so frightened and terrorized as to render him incapable of rational and prudent action with reference to his own safety; and that thereby he was relieved of the legal consequences of his negligent act in crossing in front of the moving train.

[3-7] Before deceased could be relieved of such an apparently heedless and reckless act of dashing in front of a rapidly moving train, not only must he have been frightened and terrorized because of the perilous position from which he felt he must escape, but he must have been placed in such perilous position solely through the negligent act of appellant. Where the danger is one incident to the place, its use or surroundings, one cannot voluntarily put himself in such a place and then plead the defense of sudden peril, for the danger resulting from the known use of such a place is one he must anticipate and guard against by proper care and precaution. Beaty v. Railway Co. (Tex. Civ. App.) 175 S. W. 450; volume 3 (3d Ed.) Elliott on Railroads, § 1669. Deceased voluntarily placed himself between the refrigerator cars and the main track of appellant's railroad, at a time when he must know that one of appellant's trains will shortly pass and will only stop at the station by being flagged. The use of the track by pedestrians that was shown by the evidence was sufficient, under the finding of the jury, to make him a licensee and relieve him from the consequences of a trespasser, but this fact did not render the place where he was any the less dangerous, nor did it relieve him of knowledge of the fact that the east-bound passenger train arriving at 1 o'clock p. m. would render his position perilous if he remained between the box cars and the main track, nor did it lessen the duty resting upon him to take some precaution to guard against such a known peril. G. C. & S. F. R. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; Texas Midland R. R. Co. v. Byrd,

102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137. While he was in such position signals of the approaching train were noted by every one in the immediate vicinity, and the inference is conclusive that it was noted by deceased also, yet he remained in the dangerous position, and, though he could have seen the approach of the train several hundred feet from him, he never discovered it until it was bearing down on him and he found himself in a position of extreme danger. The least precaution on his part would have prevented the very condition about which complaint is made.

[8] The rule which does not require one to act with the same care, as if he had full opportunity to exercise his reasoning faculties, when required to act suddenly, in the face of imminent danger, has no application in a case where the person's own negligence contributed to the peril from which he seeks to extricate himself. Beaty v. Railway Co., supra; Elliott on Railroads, supra; 20 R. C. L. p. 135; Bentson v. Brown, 186 Wis. 629, 203 N. W. 380, 38 A. L. R. 1417. The evidence is conclusive that deceased took no precaution to discover the approaching train, but on the contrary continued in his dangerous position between the tracks after he was warned by train signal that the train was approaching, and that his position was consequently becoming more dangerous every moment. Under such circumstances the conclusion is inevitable that the perilous position, from which deceased attempted to extricate himself by the rash and inconsiderate act of running in front of the train, was at least partly brought upon him by his own negligence. We therefore hold that the court erred in submitting the issues embraced in this assignment of error. As the issue of discovered peril, the only issue in this case on which a recovery could be based, was determined adversely to appellees, it follows that this case must be reversed and here rendered in favor of appellant.

Reversed and rendered.

### On Motion for Rehearing.

In their motion for rehearing appellees earnestly contend that the opinion in this case is in conflict with the opinion of the Galveston Court of Civil Appeals in the case of Graham v. Hines et al., 240 S. W. 1015. To this contention we cannot agree. In the reported case the court held that where a motorcycle driver was acting with proper care in approach of track at crossing until he discovered approach of train, and then became so frightened and terrorized on discovery of train by reason of the railroad's negligence that he was incapable of rational and prudent action with reference to avoiding the collision, his failure to exercise ordinary care under the circumstances did not preclude recovery for injuries. This holding of the court is based upon an unchallenged finding of the jury that the motorcycle driver, plaintiff in the suit, was observing ordinary care for his own safety until, by reason of the negligence of the operatives of the train, he became so frightened and terrorized that he was incapable of rational and prudent action. The motorcycle driver was on a public thoroughfare and approaching a public crossing on the railroad. No want of ordinary care could be charged against him for being in the public highway with the intent of using said crossing. In the instant case, the deceased had voluntarily taken his position between a main track and a switching track at a place where a train passing on the main track would render hs position hazardous. The jury by a finding exonerated the deceased from negligence because of the position in which he had placed himself. This finding was challenged because unsupported by evidence and contrary to affirmative evidence in the case. It is undisputed that the deceased had voluntarily placed himself in a position which would become exceedingly perilous if a train passed on the main track while he was in such position; that deceased had placed himself in such position at a time when a regular, scheduled passenger train was due to pass on the main track and would not stop at the station unless signaled to do so; and that any precaution in looking out for the coming of the train would have resulted in deceased's knowledge of its coming in time to have extricated himself with safety from such position. This court felt impelled to sustain the assignment of error challenging the finding of the jury in this respect.

We are therefore of the conclusion that there is no conflict between this case and the reported case, and the motion for rehearing is overruled.