## McCREARRY et al. v. ST. LOUIS SOUTH-WESTERN RY. CO. (No. 862—4953.)

Commission of Appeals of Texas, Section B. Jan. 25, 1928.

**1. Appeal and error ⊜⇒1094(1)—Jury's finding on question of negligence was binding on courts.**

Jury's finding of fact on question of negligence was binding on the Commission of Appeals as well as on the Court of Civil Appeals and district court.

**2. Railroads ⊜⇒402—Findings that deceased did not use ordinary care, and that justifiable fright caused him to run in front of train, held irreconcilable.**

In action against railroad for death of person caught between cars on side track and main track, who ran in front of passing train, findings that under circumstances ordinarily prudent person would not have attempted to cross in front, of train, and that deceased's fright caused him to run in front of train, and that fright was reasonably justified under circumstances, being irreconcilable, Court of Civil Ap-. peals properly reversed district court's judgment for plaintiff.

**3. Trial ⊜⇒352(4)—Submitting questions requiring jury to find deceased was walking between railroad tracks before injury by train held error, where evidence showed he ran.**

In action against railroad for death of person caught between car on side track and main track, who ran in front of passing train, submission of questions requiring jury to find that deceased was walking between the tracks held error, where all testimony for both parties was to effect that, immediately preceding the infliction of injuries on deceased, he was running between tracks.

**4. Railroads. ⊜⇒400(10)—Whether conduct of deceased was result of terror occasioned by imminent danger resulting from railroad's negligence held for jury.**

In action against railroad for death of person caught between car on side track and main track, who ran in front of passing train, question whether conduct of deceased in running between tracks was result of mental terror, occasioned by. imminent danger as result of negligent acts by defendant in failing to ring bell, etc., held for jury.

**5. Railroads ⊜⇒395—Evidence of railroad's failure to provide whistling post and condition of roadbed held inadmissible under pleadings.**

In action against railroad for death of person caught between car on side track and main track, who ran in front of passing train, admitting evidence that there was no whistling post for distance of 1,400 feet, and that only small amount of clay ballast was along there, and that main track rested only on clay and sand, held error, where there was no allegation of negligence by defendant in respect stated, nor that same in any manner proximately contributed to death of deceased.

**6. Trial ⊜⇒121(5)—Attorney's argument to jury based on evidence erroneously admitted, held improper.**

In action against railroad for death of person caught between car on side track and main track, who ran in front of passing train, plaintiff's attorney's argument to jury to effect that railroad track had no ballast, in consequence of which engine was lunging and plunging, reeling and rocking, creating cloud of dust as it approached deceased, held improper, where there was no pleading on which to base testimony to that effect.

**7. Trial ⊜⇒125(1)—Plaintiff's attorney's remarks that minor plaintiff would never hear voice of father held improper, in action for death.**

In action for damages for death by deceased's widow on behalf of herself and minor child, plaintiff's attorney's remarks to effect that minor plaintiff, shown to be about two years of age, would never hear his father's voice, or know that he had a father, etc., held improper, not being germane to any issue in case.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Mrs. Myrtle McCrearry for herself and as next friend of J. H. McCrearry, her minor son, against the St. Louis Southwestern Railway Company. Judgment for plaintiffs was reversed, and judgment rendered for defendant by the Court of Civil Appeals (296 S. W. 935), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and cause remanded to district court.

J. D. Pickett, of Palestine, and Sam Holland, of Athens, for plaintiffs in error.

E. B. Perkins, of Dallas, Richard & A. P. Mays, of Corsicana, and E. A. Landman, of Athens, for defendant in error.

SHORT, P. J. The plaintiff in error, for herself and for the benefit of her minor child, brought this suit for damages against the defendant in error, alleging the negligent infliction of fatal injuries upon her husband, and recovered a judgment for $3,000 in the district court. Upon appeal by the defendant in error to the Court of Civil Appeals at Dallas, the judgment of the district court was reversed and rendered in favor of the defendant in error. 296 S. W. 935.

The facts developed at the trial, as stated in the opinion of the Court of Civil Appeals, are as follows:

"The deceased, J. H. McCrearry, the husband of Mrs. McCrearry and the father of the minor, on the date of his death, was engaged in picking peaches in an orchard near Nash, a flag station on appellant's railway in Henderson county, and had been so engaged for two or three days previous to the accident in which he lost his life. There is at Nash a small shed used as a depot, but no agent. There is also a shed about 96 feet long, built and constructed along by, and in close proximity to, the side track of appel-

lant's railroad at said place. This shed is east of the depot, and both of these structures are on the south side of appellant's tracks. Appellant's line runs approximately east and west at this place, the side track making off from the main track west of the depot, and extending parallel with it for some distance east of the fruit shed. The distance between these tracks in the vicinity of the depot and the fruit shed is 14 feet, measured from the center of the main track to the center of the side track. On the occasion in question there were from three to four or five refrigerator cars sitting on the side track extending beyond the peach shed at either end of same. The length of these cars is from 36 to 40 feet. A county pike road adjacent to the right of way extends east and west along the north side of the right of way, and crosses the railroad track about a half a mile west of the depot. A small store stands just north of the pike and nearly opposite the depot. West of the peach shed a traveled wagon road crosses the main line and side track going east and west, and has been regularly used as such for some years. The distance from the west end of the shed to the center of this road is 33 feet. This is not a county road, but the railroad has placed the usual warning sign announcing this crossing. Some 300 feet south of the depot another similar road crosses these tracks. It does not appear, however, that there is the accustomed warning sign at this crossing. On the morning of the accident the deceased worked in the orchard until noon, when he traveled about a half a mile from where he was working to the store, purchased his lunch, and crossed over to the first of the said refrigerator cars from the west, where he sat down in the shade of the car, near its west end, and ate his lunch. This placed him in the space between the two tracks. During his meal he engaged in conversation with another man until he had finished his meal, and some other employees from the same orchard, who had eaten their lunch near the same place, called to him that it was work time, when he walked nearer the east end of this same car, where he drank from the drippings from the melted ice of said car. At about the time he finished drinking the approaching east-bound passenger train, that had not signaled a stop at this station, was first discovered by him, being perhaps not over 50 feet away. He started on a fast run east between the main track and the refrigerator cars, and after he had run some distance, but before he had reached the east end of the cars on the side track, he suddenly turned to the north and attempted to cross the track in front of the moving train, when he was struck by the engine, knocked clear of the track on its north side, and received injuries from which he died a few hours afterwards. These tracks and the space between had been used for about a space of 20 years by pedestrians who had occasion to travel this direction for some distance both east and west of the peach shed. The use was much more frequent during the few weeks in summer of the season for marketing peaches. Frequently during this season those working either at the peach shed or in the neighboring orchards would eat their lunches in the shade of the refrigerator cars that were usually standing in the vicinity of the shed and likewise drink from the drippings of the melting ice from such cars. The evidence is undisputed that the engine of the

approaching train sounded the whistle from once to a number of times, some witnesses testifying to a whistle for the station as well as three different whistles for the three crossings west of the shed and others testifying not to have heard the whistle on all of said occasions.

"The speed of the train from the time it passed the depot until it struck the deceased is variously estimated by the witnesses, the minimum speed testified to being 9 miles per hour and the maximum 40 miles per hour. These witnesses, however, may be divided into two groups, one placing the speed from 9 to 15 miles per hour and the other group placing it from 30 to 40 miles per hour. The schedule time of this train at Nash was 1 p. m., and it was on time on this occasion. The evidence as to the ringing of the bell on the engine as it approached and passed the depot is conflicting. The distance the train ran after it struck deceased is also conflicting, ranging in distance from the length of the train, which consisted of the engine, tender, express, and baggage car, and from three to four or five coaches, this not being certain, to about one-third of its length. We adopt the finding of the jury in reference to these issues, and find that the train was making a speed of 20 miles an hour at said time and that the bell was not rung."

In support of its conclusion that the plaintiff in error was not entitled to recover, and that it was its duty to reverse the judgment of the district court, and render one in favor of the defendant in error, the Court of Civil Appeals asserted in effect that, in an action for death of one who voluntarily placed himself between cars on side track and main track of the railroad at a time when he must have known a train would shortly pass, the deceased, in dashing in front of the moving train, could not be relieved from the consequences of his contributory negligence by the existence of a condition of peril, even though the perilous position was brought about partly by defendant's negligence. Discussing this phase of the case, it is said in the opinion:

"Before deceased could be relieved of such an apparently heedless and reckless act of dashing in front of a rapidly moving train, not only must he have been frightened and terrorized because of the perilous position from which he felt he must escape, but he must have been placed in such perilous position solely through the negligent act of appellant. Where the danger is one incident to the place, its use or surroundings, one cannot voluntarily put himself in such a place and then plead the defense of sudden peril, for the danger resulting from the known use of such a place is one he must anticipate and guard against by proper care and precaution. Beaty v. Railway Co. (Tex. Civ. App.) 175 S. W. 450; 3 Elliott on Railroads (3d Ed.) § 1669. Deceased voluntarily placed himself between the refrigerator cars and the main track of appellant's railroad, at a time when he must know that one of appellant's trains will shortly pass and will only stop at the station by being flagged. The use of the track by pedestrians that was shown by the evidence was sufficient, under the finding of the

jury, to make him a·licensee and relieve him from the consequences of a trespasser, but this fact did not render the place where he was any the less dangerous, nor did it relieve him of knowledge of the fact that the east-bound passenger train arriving at 1 o'clock p. m. would render his position perilous if he remained between the box cars and the main track, nor did it lessen the duty resting upon him to take some precaution to guard against such a known peril. G. C. & S. F. R. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; Texas Midland R. R. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137. While he was in such position signals of the approaching train were noted by every one in the immediate vicinity, and the inference is conclusive that it was noted by deceased also, yet he remained in the dangerous position, and, though he could have seen the approach of the train several hundred feet from him, he never discovered it until it was bearing down on him and he found himself in a position of extreme danger. The least precaution on his part would have prevented the very condition about which complaint is made."

The first assignment of error and the proposition under it assail the correctness of this part of the opinion, which opinion is, in effect that the deceased, by the evidence, is conclusively shown to have been guilty of contributory negligence proximately causing his death as a matter of law. In order that we might determine whether the Court of Civil Appeals was right in its conclusion in this respect, it has become necessary for us to examine the statement of facts to determine whether the statements of fact in that part of the opinion quoted last find legally sufficient support in the testimony. For instance, it is said by the Court of Civil Appeals:

"Deceased voluntarily placed himself between the refrigerator cars and the main track of appellant's railroad, at a time when he must know that one of appellant's trains will shortly pass and will only stop at the station by being flagged."

And again:

"While he was in such position signals of the approaching train were noted by every one in the immediate vicinity, and the inference is conclusive that it was noted by deceased also."

A reading of the statement of facts convinces us that the trial court may have been justified in finding as a fact, in support of the judgment rendered for plaintiff in·error, that the deceased did not know that one of appellant's trains would shortly pass, and would only stop at the station by being flagged, since there were some circumstances proven in the case upon which the trial judge might have based such a finding. If, in fact, the deceased did know that one of appellant's trains would shortly pass, and with this knowledge he voluntarily placed himself in the dangerous position he was, and made no effort to remove himself from such position at a time when he could have done so, and

which a person of ordinary prudence would have done, then it necessarily follows that the opinion of the Court of Civil Appeals on this point would be correct. However, a reading of the statement of facts demonstrates that the evidence is by no means conclusive the deceased knew that one of appellant's trains would shortly pass while he was in the dangerous position in which he was just before the injuries were inflicted. In truth, we have not been able to find any substantial testimony whatever in the record in support of this statement in the opinion. If the deceased did not know that one of appellant's trains would shortly pass, and that in passing he would be placed in danger of receiving injury, no duty under these conditions rested upon him to take any precaution to guard against such a peril.

As to the second quotation from the opinion, the testimony shows that all the witnesses who testified in the case with reference to the immediate evidence surrounding the tragedy said that they heard the train whistle at a crossing some distance west of the depot, but there is no evidence in the rec-, ord that every one in the immediate vicinity testified in the case. So the statement in the opinion that every one in the immediate vicinity noted the signals of the approaching train, while finding support in the condition above related, is not justified, because of the absence of testimony that every one in the immediate vicinity were witnesses in the case.

Proceeding to discuss this question further, the Court of Civil Appeals, after assuming as facts the matters hereinbefore discussed, proceeds correctly to state that:

"The rule which does not require one to act with the same care, as if he had full opportunity to exercise his reasoning faculties, when required to act suddenly, in the face of imminent danger, has no application· in a case where the person's own negligence contributed to the peril from which he seeks to extricate himself."

It has been seen that the facts upon which the Court of Civil Appeals based its action in the rendition of the judgment in favor of the defendant in error have no such support in the testimony as justified such action, and we are therefore of the opinion that this assignment should be sustained to the extent that it calls in question the correctness of the action of the Court of Civil Appeals in rendering the judgment in favor ' of the defendant in error.

The authorities discussed by the parties in their brief depend for their application upon facts which have been proven in the case, and, since we have reached the conclusion. we have based upon the absence of facts, it will not be necessary to discuss these authorities having reference to this particular matter.

Speaking broadly, the theory of the plain-

tiff in error is that the deceased was a licensee, and therefore authorized to be where he was when the train approached; that the train approached the point opposite where the deceased was so silently and suddenly as to create in the deceased a condition of terror, rendering him incapable of exercising his mental faculties so as to enable him to protect himself against the peril with which he was threatened, and that, in an endeavor to avoid the peril, he placed himself in front of the train while in that condition of mind, for which conduct he was not responsible, since it was brought about by the negligence of the defendant in error. The theory of the defendant in error is that the deceased, without being in anywise terrorized by the approach of the train, but, on the contrary, seeing and knowing its approach, deliberately sought to outrun the train and cross in front of it to catch up with some of his companions who had gone on ahead of him, and that, in making this effort, he was struck by the train without any negligence on the part of those in charge of the train.

The jury found in response to special issues presented by the court the following facts: (1) The operators in charge of the train failed to ring the bell continuously from a distance of not less than 80 rods from the crossing at the peach shed until they reached the crossing; (2) such failure to so ring the bell constituted negligence; (3) such negligence was the proximate cause of the death of the deceased; (4) the train was going at the rate of 20 miles an hour when it struck the deceased; (5) such speed was negligence on the part of the operators of the train at the time it struck the deceased; (6) such negligence was the proximate cause of the death of the deceased; (7) the space between the tracks where the deceased was struck was commonly used by pedestrians with a knowledge of the defendant in error; (8) the deceased, in walking between the tracks at the time and place, was not guilty of negligence; (9) *under the circumstances of the situation an ordinarily prudent person, situated as the deceased was, and with knowledge of the approaching train, would not have attempted to cross in front of it;* (10) the operators of the train before the collision did not discover the deceased in his perilous position in time to avoid the collision. The jury, in response to questions propounded by the court at the request of the plaintiff in error, further found that the deceased, when he became aware of the approach of the train, became so frightened and terrorized as to render him incapable of rational prudent action with respect to his own safety, and that such fright and terror were proximately caused by the negligence of the defendant in error, and that such fright and terror were reasonably justified under the circumstances. That is to say, a person of ordinary foresight and prudence,

similarly situated, would have become so frightened and terrorized.

[1, 2] In view of the facts found by the jury which have been adopted by the Court of Civil Appeals, it is apparent that the judgment of the Court of Civil Appeals is correct in so far as it reverses the judgment of the district court, since it appears that there is an irreconcilable conflict in the verdict. The jury finds, in answer to one of the issues submitted, that *"under the circumstances of the situation such as the deceased was and with knowledge of the approaching train, an ordinarily prudent person would not have attempted to cross in front of it."* Under this finding of fact, which is binding upon us, as well as upon the Court of Civil Appeals and the district court, the deceased was clearly guilty of contributory negligence at the time he received injuries for the recovery of damages upon which the suit is based. Notwithstanding this finding of fact, the jury rendered a verdict that the deceased, when he became aware of the approach of the train, became so frightened as to render him incapable of rational action with respect to his own safety, and that such fright was proximately caused by the negligence of the defendant in error, and was reasonably justified under the circumstances. Under these findings of fact, other conditions justifying recovery being present, the deceased was not guilty of contributory negligence as a matter of law, and did not entitle the defendant in error to judgment such as was rendered by the Court of Civil Appeals, but did authorize the judgment rendered by the trial court. T., & P. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; G., C. & S. F. Ry. Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; International Great Northern Ry. Co. v. Oehler (Tex. Civ. App.) 262 S. W. 785; Beaumont, etc., Ry. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320; Wells Fargo Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Veazey v. Galveston, etc., Ry. Co. (Tex. Civ. App.) 290 S. W. 283; Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015. These findings being irreconcilable, the opinion of the Court of Civil Appeals reversing the judgment of the district court was correct, though as heretofore said we do not approve the reasons given in the opinion of the Court of Civil Appeals for its action in so doing.

It is not necessary to discuss the other assignments of error presented by the plaintiff in error, since they are of the same nature as the assignment which has been discussed and sustained.

In view of another trial of the case in the district court, it is proper, and perhaps necessary, that at least some of the assignments presented to the Court of Civil Appeals by the defendant in error should be noticed by us. The defendant in error presented to the Court of Civil Appeals the question we have already discussed as to the conflict in the

answers of the jury, and what we have said upon this subject we deem sufficient, merely sustaining this assignment.

[3, 4] Objection was made to the submission to the jury of questions 8 and 9, requiring the jury to find that deceased was "walking" between the tracks, on the ground that the same was misleading and improper. In view of the testimony, we sustain this assignment, since all of the testimony, both for the plaintiff in error and the defendant in error, is to the effect that, immediately preceding the infliction of the injuries upon the deceased, he was "running" between the tracks. The plaintiff in error's theory was that the conduct of the deceased in so running between the tracks was the result of mental terror, occasioned by imminent danger resulting from the negligent acts of the defendant in error. As we have already indicated, we think there is testimony justifying the submission of this question to the jury in a proper form, but we think the use of the word "walking" was perhaps misleading.

[5, 6] The defendant in error objected to the action of the court in permitting the witness Erbin Walker to testify, in effect, that for a distance of 1,400 feet west of the peach shed there was no whistling post along the right of way to advise trainmen to whistle, and that only a small amount of clay ballast was along there, but that the main track adjacent to the shipping shed rested on only clay and sand, on the ground that there was no allegation of negligence by plaintiff in error in the respect stated, nor that the same in any manner proximately contributed to the death of the deceased. An examination of the pleadings of the plaintiff in error forces the conclusion that these objections to this testimony ought to have been sustained. The defendant in error also objected to some portion of the argument presented to the jury by the attorney for the plaintiff in error, to the effect that the railroad track had no ballast, in consequence of which the engine was lunging and plunging, reeling and rocking, creating a cloud of dust as it approached the deceased. We sustain this assignment, since there was no pleading upon which to base the testimony of the witness Walker, and this argument to the jury was only authorized upon the idea that this testimony was material and admissible.

[7] We also sustain the assignment of the defendant in error, based upon other remarks of the attorney representing the plaintiff in error, to the effect that the minor plaintiff, shown to be about two years of age, would never hear his father's voice, or know that he had a father, etc. These remarks are not germane to any issue in the case, and were not proper, and might constitute reversible error under some circumstances.

We have considered all the other assignments found in the brief of the defendant in error, and overrule them; but, for the error committed by the Court of Civil Appeals in rendering judgment in favor of the defendant in error, we recommend that said judgment be reversed, and that the cause be remanded to the district court for further proceedings not inconsistent with this opinion.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.